In the

# United States Court of Appeals

## For the Seventh Circuit

No. 14-2958

MARC SHELL,

*Plaintiff-Appellant*,

*v.*

KEVIN SMITH, in his official capacity
as Mayor of the City of Anderson, *et
al.*,

*Defendants-Appellees.*

Appeal from the United States District Court for the
Southern District of Indiana, Indianapolis Division.
No. 1:13-CV-583 — **Jane E. Magnus-Stinson**, *Judge.*

ARGUED MARCH 31, 2015 — DECIDED JUNE 15, 2015

Before KANNE and ROVNER, *Circuit Judges*, and
SPRINGMANN, *District Judge.*[*]

---

[*] The Honorable Theresa L. Springmann of the Northern District of
Indiana, sitting by designation.

THERESA L. SPRINGMANN, *District Judge.* Plaintiff-Appellant Marc Shell worked for the City of Anderson Transit System (CATS) as a Mechanic's Helper on the day shift. According to the job description for the position, a Mechanic's Helper may occasionally drive buses to field locations. A Commercial Driver's License (CDL) is required to drive the CATS buses. Shell's hearing and vision impairments prevent him from obtaining a CDL. Nevertheless, he worked for twelve years in the position without a CDL and without driving a bus. When general manager Stephon Blackwell was appointed at CATS as part of personnel changes made by the new mayor, he informed Shell that his employment would be terminated unless he obtained a CDL, as the job description required it. When Shell did not get his CDL, Blackwell terminated his employment.

After he was fired, Shell sued the City under the Americans with Disabilities Act (ADA) for failure to accommodate his disability, leading to the termination of his employment. He also alleged that his termination was politically motivated. The district court granted summary judgment in favor of the City.

On appeal, Shell challenges only the district court's entry of judgment as a matter of law on his ADA claim. We agree that a jury should decide whether the City violated the ADA.

The ADA provides that a covered employer shall not "discriminate against a qualified individual on the basis of disability." 42 U.S.C. § 12112(a). "Discrimination," for the purposes of § 12112(a), includes "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability" unless

the employer "can demonstrate that the accommodation would impose an undue hardship on the operation of the business." 42 U.S.C. § 12112(b)(5)(A). To establish a claim for failure to accommodate, a plaintiff must show that he is a "qualified individual with a disability." *EEOC v. Sears, Robuck & Co.*, 417 F.3d 789, 797 (7th Cir. 2005). A qualified individual is defined as "an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position." 42 U.S.C. § 12111(8).

The issue on appeal is whether the record contains sufficient evidence from which a reasonable jury could conclude that driving a bus was not an essential function of Shell's job as a Mechanic's Helper. In deciding this question, we review the district court's grant of summary judgment de novo. *Bay v. Cassens Transp. Co.*, 212 F.3d 969, 972 (7th Cir. 2000). Summary judgment is appropriate where the admissible evidence shows that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Lawson v. CSX Transp., Inc.*, 245 F.3d 916, 922 (7th Cir. 2001). In determining whether a genuine issue of material fact exists, we view the record in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby*, 477 U.S. 242, 255 (1986).

The City maintains that Shell was not a qualified individual because he did not satisfy "the requisite skill, experience, education and other job-related requirements of the employment position," 29 C.F.R. § 1630.2(m). According to the City, possessing a CDL is a lawful qualification standard—"job related and consistent with business necessity"—that Shell

cannot meet. *See* 42 U.S.C. § 12113(a) (recognizing as a defense an employer's "qualification standards" that deny a job to an individual with a disability as long as those standards are "job-related and consistent with business necessity"); *see also* 29 C.F.R. 1630.15(b)(1).

However, disposing of Shell's claim is not that straightforward. The City could only require Shell to have a CDL if one was necessary to perform an essential function of the Mechanic's Helper position. *See, e.g., Baert v. Euclid Beverage, Ltd.,* 149 F.3d 626, 631–32 (7th Cir. 1998) (conflicting evidence on issue of whether driving a truck was an essential function of Driver Helper position precluded summary judgment in favor of an employer despite its claimed policy that Driver Helpers hold the same CDL the Drivers held). Driving a bus is the only function of the Mechanic's Helper position that requires a CDL. So if driving a bus is not one of the fundamental job duties of the position, the City could not use Shell's inability to obtain a CDL as the basis for his termination.

An essential function is a fundamental job duty required of a person in the job; a marginal duty is not an essential function. *See* 29 C.F.R. § 1630.2(n)(1). EEOC regulations provide:

> A job function may be considered essential for any of several reasons, including but not limited to the following:
>
> (i) The function may be essential because the reason the position exists is to perform that function;
>
> (ii) The function may be essential because of the limited number of employees available among

whom the performance of that job function can be distributed; and/or

(iii) The function may be highly specialized so that the incumbent in the position is hired for his or her expertise or ability to perform the particular function.

29 C.F.R. § 1630.2(n)(2). Factors that may be taken into account when determining whether a job duty constitutes an essential function include:

(i)   The employer's judgment as to which functions are essential;

(ii)  Written job descriptions prepared before advertising or interviewing applicants for the job;

(iii) The amount of time spent on the job performing the function;

(iv)  The consequences of not requiring the incumbent to perform the function;

(v)   The terms of a collective bargaining agreement;

(vi)  The work experience of past incumbents in the job; and/or

(vii) The current work experience of incumbents in similar jobs.

29 C.F.R. § 1630.2(n)(3).

In advancing the importance of the driving requirement and the corresponding CDL requirement, the City has relied chiefly on a written job description for the Mechanic's Helper

position. According to a job description created in 1992, the Mechanic's Helper is "responsible for assisting with mechanic duties, and washing, cleaning, lubricating, and refueling vehicles." This description of the job suggests that the Mechanic's Helper assists only with vehicles. Several of the listed duties deal specifically with vehicles. For example, a Mechanic's Helper is to clean the buses, replace batteries and lights, maintain fluid levels, perform various light mechanical maintenance work on vehicles, report low quantities of automotive supplies and pick up parts, and maintain equipment, tools, and work areas in clean and orderly condition. The job description states that a Mechanic's Helper "may occasionally drive and deliver buses to various field locations." Other duties listed in the job description have nothing to do with the buses or mechanical duties. The job description states that a Mechanic's Helper cleans "garage and office areas, including sweeping, mopping, washing windows and walls, and emptying trash; mows grass and trims around building; paints as needed."

Shell urges that the job description is just one factor to consider. Indeed, as cited above, the regulations list it as just one of several. The ADA itself requires that "consideration" be given to the employer's judgment as to what functions are essential, and that a job description be "considered evidence of the essential functions." 42 U.S.C. § 12111(8). The employer's determination about what functions are essential is certainly given weight, but it is one of seven factors the court should consider, including "[t]he amount of time spent on the job performing the function" and "[t]he consequences of not requiring the [employee] to perform the function." 29 C.F.R. §

1630.2(n)(3)(iii), (iv); *see also Miller v. Ill. Dep't of Transp.*, 643 F.3d 190, 198 (7th Cir. 2011) (recognizing that under the federal regulations, "the employer's judgment is an important factor, but it is not controlling" and "we also look to evidence of the employer's actual practices in the workplace"); *DePaoli v. Abbott Labs.*, 140 F.3d 668, 674 (7th Cir. 1998) (noting that while we do not otherwise second-guess the employer's judgment in describing the essential requirements for the job, we do look to see if the employer actually requires all employees in a particular position to perform the allegedly essential functions). The district court, in giving deference to the City's position, did not consider any of the other § 1630.2(n) factors, or draw reasonable inferences in Shell's favor as required at the summary judgment stage. The record contains facts that might cause a reasonable jury to discount the City's reliance on the job description, particularly as it relates to the need to drive a bus.

First, the language of the driving duty itself is qualified by "may" and "occasionally."[1] Second, and more importantly, the City's actual practices suggest that the need for a day shift Mechanic's Helper to drive a bus is not fundamental to the job. This same job description was in place when Shell was hired.

---

[1] The job description is less equivocal where it states that a duty of the position is to "[o]perate[] City vehicles in service, maintenance and repair work." However, it is unclear what operate means in connection with maintenance, or how this is different from the separate "may occasionally drive" requirement. It may be that the former does not require a CDL. Shell's designated evidence is that he performed the operating function.

It did not change for all twelve years that Shell filled the position. Yet, driving buses on public roads was not part of his regular duties for any portion of the twelve years he held the position. Whenever Shell was required to be present at a field location, he drove his own vehicle. Shell would run errands, pick up parts and supplies, transport materials between the CATS garage and terminal, and ride with the Director of Operations or with the mechanics who were moving buses to various locations for repairs. Although an employer's ability to assign duties to another employee does not make them nonessential, *see Basith v. Cook Cnty.*, 241 F.3d 919, 929 (7th Cir. 2001), it is difficult to see how the duty could be deemed essential at the summary judgment stage when there is no evidence that its reassignment impacted the City's ability to provide dependable transit services to its citizens in an efficient or effective manner, or otherwise created a hardship or burden.

The City argues, without evidentiary proof, that not requiring Shell to operate CATS vehicles, and instead requiring other employees—who are not Mechanic's Helpers—to do so, would decrease the efficiency of CATS's operations. The record does not indicate how many CATS's employees had CDLs and were available to move a bus for repair purposes. We were advised at oral argument that many of the employees hold such a license, having started their careers as bus drivers. Certainly, all the mechanics and the drivers have CDLs. A reasonable inference is that driving a bus is not a function that only a limited number of CATS's employees can perform. Nor is the record developed regarding how many times a mechanic or driver might actually desire another employee to drive a bus, or for what reasons, or how much time the task might

take. While the amount of time spent performing a task is but one factor to consider, a duty is "not essential if it [is] so small a part that it could be reassigned to other employees at negligible cost to the employer." *Kauffman v. Petersen Health Care VII, LLC*, 769 F.3d 958, 962 (7th Cir. 2014). Beyond its conclusory statement, the City offers no evidence of any actual burden on the operation of the transit system. This void exists despite the fact that CATS operated for more than a decade without requiring the Mechanic's Helper on day shift to drive a bus. Certainly, that is a sufficient length of time to realize a negative impact and be able to present some evidentiary proof of the same.

The City insists that it does have proof regarding the negative consequences, and points to the Declaration of Rick Garrett, who became the Director of Operations at the same time that Blackwell became the General Manager after the new mayor took office. Garrett explains that the employee hired to replace Shell, Darrell Rensel, has a CDL and "can perform all of the tasks identified in the Mechanic's Helper job description." (See Supp. App. 105, Decl. of Rick Garrett ¶ 10.) This statement is no more pertinent to the question at hand than the equally obvious statement that Shell cannot perform all the duties identified. Additionally, stating that he "can perform" tasks provides no insight into whether he actually performs them, how often he performs them, or whether they are necessary. The Declaration does not even single out driving buses from all the other tasks listed in the job description, and certainly does not address whether CATS's operations would be burdened by making other arrangements for the particular duty of driving a bus. Garrett adds that "[h]aving a CDL, so

Mr. Rensel can perform maintenance functions on CATS vehicles, is an essential function of the Mechanic's Helper position." This conclusory statement does not have evidentiary value. Garrett does not even identify the "maintenance functions" that Rensel "can perform." Accordingly, the City is left with no evidence on summary judgment to suggest that the consequences of not requiring that the Mechanic's Helper drive a bus is a factor that weighs in its favor and should preclude a jury trial.

The City argues that just because it restructured the job in the past and allowed Shell to perform janitorial, but not all mechanical, duties does not require it to continue to go beyond the ADA's requirements. The City relies on *Winfrey v. City of Chicago*, 259 F.3d 610 (7th Cir. 2001), and *Basith v. Cook County.*, 241 F.3d 919 (7th Cir. 2001). This argument assumes that the duty at issue is an essential function of the job, and that the City previously accommodated Shell beyond what the ADA demands when it did not require him to perform the duty. If these assumptions are true, the City is correct. And while a jury could ultimately agree with the City, genuine issues of material fact preclude making these prerequisite assumptions at the summary judgment stage of this case.

In *Winfrey*, the city developed a revised job description for a ward clerk position to be held by an employee who had become blind. However, the supervisor for the position was not consulted and only found out the plaintiff was blind when he showed up for work. The supervisor did not know how to accommodate the plaintiff, so he only allowed him to answer phones and take messages. A few months later, consultants who worked on behalf of the blind came to the worksite to

develop adjusted ward clerk duties. The supervisor prepared a list of four "partial essential" ward clerk duties he thought the plaintiff could perform. 259 F.3d at 613. The consultants prepared a recommendation for the plaintiff that concluded that he was capable of performing these ward clerk functions. However, there were other ward clerk functions that the plaintiff did not perform. *Id.* at 614. The city did not train the plaintiff to perform all the duties required of a ward clerk. Thus, he was not considered a full ward clerk, nor was he remunerated as one in the scaled-down job. The plaintiff desired a higher paying job, such as a full ward clerk, and sued the city under the ADA for failing to accommodate his blindness. The plaintiff argued that the city's willingness to create the adjusted, limited ward clerk position demonstrated that those four duties must have been the only essential duties of the full ward clerk position. Responding to this argument, we noted that it was "clear from the onset of this case that the City created a modified ward clerk position for [the plaintiff], consisting of duties that [his supervisor] believed he could perform." *Id.* at 616. The creation of the modified position did not demonstrate that the four duties he performed were the only essential duties for the unmodified position. *Id.*

The plaintiff in *Basith* was a pharmacy technician in a county hospital. The evidence in the case established that delivery of medications to the hospital's patients was essential to the functioning of the pharmacy, and that the pharmacy technician was the best position to fulfill this need. *Basith*, 241 F.3d at 929. The plaintiff could not deliver medications to patients, but desired to hold the pharmacy technician position anyway. One of the plaintiff's arguments against a finding that

delivery was an essential function was that his employer had previously created a position for him that did not require delivery. We held that "[a]bsent independent evidence that the function was non-essential, we do not believe it wise to consider the special assignment as proof that delivery was not an essential function because it would punish [the defendant] for going beyond the ADA's requirements." *Id.* at 930 (stating that the evidence showed that the job could be restructured, not that delivery was non-essential). As we noted, Basith's suggested accommodation would have resulted in the restructuring of his job and the jobs of other employees, which the ADA does not require. *Id.*

In both *Winfrey* and *Basith* the employers attempted to accommodate employees who had become disabled during their terms of employment by creating special positions that required less than the full duties normally performed. These were alternative positions to the jobs the plaintiffs desired. In contrast, the City hired Shell into the Mechanic's Helper position knowing he had physical limitations that prohibited him from obtaining a CDL and driving a bus. Whether Shell was asked to perform less than all of the written duties is not indicative of whether the City considered the duties he was not expected to perform to be essential. Mark Baugher, who was one of the Directors of Operations during Shell's tenure, indicated that Shell could do everything he needed him to do as a Mechanic's Helper (Supp. App. 195, Decl. of Mark Baugher ¶ 11.) Having been employed in various CATS jobs since 1979, Baugher was also able to testify that the vehicle maintenance duties, such as oil changes and preventative maintenance at the garage, were performed by the mechanics

themselves, not the Mechanic's Helpers, even when Shell was not the Mechanic's Helper. (*Id.* ¶ 12.) In contrast, the City furnished no evidence regarding how the job was performed before Shell filled it. From Baugher's statements and Shell's continuous performance of the job for twelve years, a jury could find that restructuring the task of driving a bus was a reasonable response to a non-essential function of the Mechanic's Helper position rather than a reassignment of an essential duty. *Cf. Miller*, 643 F.3d at 197 (no summary judgment because a reasonable jury could find that a plaintiff who was unable to work at heights in exposed positions was "asking only that he be allowed to work as he had worked successfully for several years" when his supervisors and co-workers permitted him to swap tasks among his fellow crew members so that he could avoid that occasional task).

Additionally, it should be noted that there was no informed "decision" that keeping Shell employed in the same position, and doing the same duties he had done for twelve years prior, was untenable because it required others to perform an essential function of the position. Blackwell, who had been on the job for one day before giving Shell the news that he would be fired unless he obtained a CDL, looked only to the job description to make this determination. Blackwell had no prior experience managing a transportation department, and did not review Shell's performance or duties or the past practices of CATS. *Cf. Gratzel v. Office of Chief Judges*, 601 F.3d 674, 680 (7th Cir. 2010) (holding that when an employer decided to eliminate a special position the plaintiff held by incorporating it as one among many court reporter duties, which the plaintiff could not perform, no ADA violation occurred because an employer

is not required "to maintain an existing position or structure that, for legitimate reasons, it no longer believes appropriate"). Blackwell made no attempt to provide legitimate reasons for discontinuing the existing structure of the CATS garage operations.

Because there is evidence and reasonable inferences favorable to both parties, and the factual record does not establish as a matter of law that driving a bus was an essential function of the Mechanic's Helper position, this case must be allowed to proceed to a jury. The judgment of the district court is vacated, and the case is remanded for further proceedings consistent with this opinion.