In the

# United States Court of Appeals

## For the Seventh Circuit

No. 15-1114

JACK BROWN,

*Plaintiff-Appellee,*

*v.*

KEVIN SMITH,
Mayor of the City of Anderson, *et al.*,

*Defendants-Appellants.*

Appeal from the United States District Court for the
Southern District of Indiana, Indianapolis Division.
No. 12 CV 1712 — **Tanya Walton Pratt**, *Judge.*

ARGUED SEPTEMBER 11, 2015 — DECIDED JUNE 28, 2016

Before BAUER, WILLIAMS, and HAMILTON, *Circuit Judges.*

WILLIAMS, *Circuit Judge.* During his lengthy tenure at the City of Anderson Transit System (CATS), Plaintiff Jack Brown developed diabetes and became unable to maintain his commercial driver's license (CDL). For nearly a decade, this development proved irrelevant—at least from an employment standpoint. However, several years after being

promoted to a position that required a CDL, Brown was fired. He sued the City of Anderson and others, alleging that his termination amounted to disability discrimination since possession of a CDL was not an essential function of his job. After the City unsuccessfully moved for summary judgment, a jury sided with Brown and awarded him damages.

The City raises several arguments on appeal. Principally, it contends that the district court should have ruled as a matter of law that possession of a CDL was an essential job function. Alternatively, the City claims that the district court erred in instructing the jury about the essential-function inquiry, and in concluding that Brown adequately mitigated his damages. We disagree. The essential-function issue is a factual question that was properly put before the jury, and the district court's jury instructions on this issue were consistent with federal regulations and our precedent. We also conclude that Brown reasonably attempted to mitigate his damages by starting his own trailer-hauling business, despite the fact that the business ultimately failed. So we affirm the district court's judgment.

## I.  BACKGROUND

Brown held several different positions during his 28-year career at CATS, and his trajectory at the company appears to have tracked the City's shifting political winds. From 1984 to 1998, he worked as a bus driver—initially as an "extra board" (i.e., part-time) driver, then as a full-time driver. Both positions required him to possess a CDL, and he did so. He was later elevated to a dispatcher position, which did not involve driving responsibilities or require a CDL. This promotion proved fortuitous when, after developing insulin-dependent diabetes, Brown had to relinquish his CDL.

Throughout this period, Brown was an active participant in the City's Democratic Party.

In 2004, Brown was demoted to the position of mechanic's helper—a demotion that coincided with the election of Kevin Smith, a Republican, as Mayor. Although possession of a CDL was listed in the job description, CATS granted Brown an accommodation (i.e., an exemption) whereby he could maintain the job without re-obtaining a CDL. Several years later, when Smith was defeated by a Democrat, Brown was promoted to a street-supervisor position. In this new position, Brown helped ensure that drivers left the bus garage with the requisite paperwork and with operational vehicles. Like his previous mechanic's helper possession, possession of a CDL was listed in the street-supervisor job description. Although Brown did not obtain an explicit CDL-related accommodation for this new position, his supervisors were aware of his inability to obtain a CDL when they promoted him.

Brown worked as a street supervisor until he was fired in 2012—shortly after Smith regained his mayoral seat. Brown's termination notice listed his inability to "obtain CDL as required in job description" as the reason for his firing. Brown did not apply for any jobs at CATS or elsewhere in the ensuing months. Instead, he started his own business hauling trailers across the country. But after about a year in, the business failed to generate adequate revenue, and Brown began collecting Social Security disability benefits.

Brown ultimately filed suit against the City, alleging that it failed to accommodate his diabetes-related disability in violation of the Americans with Disabilities Act, and that it retaliated against him in response to his support for Smith's

Democratic opponent in violation of the First Amendment. The district court denied the City's motion for summary judgment, concluding that a genuine factual issue existed as to whether driving a bus while possessing a CDL was an essential function for street supervisors, and whether political loyalty was a prerequisite for the supervisor position.

A jury trial ensued and at its conclusion, the jury found for Brown on the ADA claim and for the City on the First Amendment claim. Brown was awarded $25,200 by the jury in compensatory damages, and $65,274.64 by the court in lost wages, benefits, and interest. This appeal followed.

## II. ANALYSIS

The Americans with Disabilities Act prohibits employers from "discriminat[ing] against a qualified individual on the basis of disability in regard to … [the] discharge of employees." 42 U.S.C. § 12112(a). Such discrimination can take the form of "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified [employee] with a disability," so long as such accommodation would not "impose an undue hardship on the operation of the business." *Id.* § 12112(b)(5)(A). An employee is "qualified" if she "can perform the essential functions of the employment position," with or without "reasonable accommodation." *Id.* § 12111(8).

The principal dispute here concerns the "essential function" question—specifically, whether the district court should have resolved the issue (instead of the jury), and whether time spent driving a bus while possessing a CDL is a relevant factor. The parties also dispute whether Brown

had adequately mitigated his damages while operating his trailer-hauling business.

### A. "Essential Function" Issue Was Factual Question for Jury

The City contends that the district court should have entered summary judgment in its favor on Brown's ADA claim. Specifically, it insists that the essential-function inquiry was a question of law for the district court (and not the jury), since the job description for Brown's street-supervisor position "establishes—as a matter of law—that the City considers the CDL requirement to be an essential job function." We disagree.

The essential-function inquiry is a factual question, *not* a question of law. As Brown notes, a "question of law" typically concerns "the meaning of a statutory or constitutional provision, regulation, or common law doctrine rather than … whether the party opposing summary judgment had raised a genuine issue of material fact." *Ahrenholz v. Bd. of Trustees of Univ. of Ill.*, 219 F.3d 674, 676–77 (7th Cir. 2000) (involving interlocutory appeals); *see also, e.g.*, *Ortiz v. Jordan*, 562 U.S. 180, 190 (2011) (observing that pure questions of law "typically involve contests not about what occurred, or why an action was taken or omitted, but disputes about the substance and clarity of pre-existing law"); *Houskins v. Sheahan*, 549 F.3d 480, 489 (7th Cir. 2008) ("While we owe deference to the jury's resolution of the contested factual issues, the determination of whether speech is constitutionally protected is a question of law for the court."). Our recent decision in *Shell v. Smith*, 789 F.3d 715 (7th Cir. 2015)—a case with nearly identical facts—illustrates this point.

In *Shell*, the plaintiff worked at CATS as a former mechanic's helper, which, according to the job description, required him to have a CDL. Although his poor hearing and vision prevented him from obtaining a CDL, he held the position for 12 years. When a new general manager was installed, the plaintiff's employment was terminated due to his inability to obtain a CDL. The district court granted the City's motion for summary judgment on the plaintiff's ADA claim but we reversed. In doing so, we recognized that the essential-function issue was a *factual* question, insofar as we concluded that a genuine factual issue existed as to whether a CDL was necessary to perform the essential functions of the mechanic's helper position. *Id.* at 717.

And because the essential-function inquiry is a factual question that goes to the sufficiency of the evidence, it cannot be preserved for appellate review after trial solely with a summary judgment motion; rather, the complaining party must file a post-verdict motion under Rule 50(b). *Ortiz*, 562 U.S. at 189 (2011); *Unitherm Food Sys., Inc. v. Swift-Eckrich, Inc.*, 546 U.S. 394, 401–02 (2006). Because the City failed to file such a motion here, it has waived its bid to win judgment as a matter of law on this ground. *See id.*

Even if the City had not waived its sufficiency-of-the-evidence argument, there is ample evidence here to support the jury's conclusion—expressly noted on the verdict form— that having a CDL was not an essential function. To be sure, Brown's job description lists possession of a CDL as a job requirement, but the content of a job description is merely one of several factors courts consider when determining whether a function is essential. 29 C.F.R. § 1630.2(n)(3); *Shell*, 789 F.3d at 718. One such factor concerns the "employer's judgment

as to which functions are essential." 29 C.F.R. § 1630.2(n)(3)(i). Here, Brown's supervisor, Mark Baugher, testified that he knew Brown did not have a CDL when Brown became a street supervisor, and that driving buses was not a key responsibility for supervisors because other individuals with CDLs were typically available to drive buses when necessary.

Two other relevant factors are the "amount of time spent on the job performing the function," and the "work experience of past incumbents in the job." *Id.* §§ 1630.2(n)(3)(iii), (vi). Here, Brown testified he performed the duties of his street-supervisor position for four years without ever needing to drive a bus. Baugher testified that during his own 20-year tenure as a street supervisor, only once did an emergency arise in which he drove a bus. And Leo Williams, yet another former street supervisor, testified that during his four-year tenure, he drove a bus only three or four times.

In addition, one may consider the "consequences of not requiring the incumbent to perform the function." *Id.* § 1630.2(n)(3)(iv). Both Brown and John Inholt, another street supervisor, testified that replacement drivers could generally be secured within 10 minutes, which allowed street supervisors to focus on ensuring that other bus drivers were operating adequately. So there was adequate evidence to support the jury's conclusion that having a CDL was not an essential job function.

**B. Jury Instruction Proper Regarding Time Spent on Essential Functions**

The City also contends that the district court erred by instructing the jury that, in determining whether possession of

a CDL was an essential function, it could consider "the amount of time spent on the job performing the function in question." We review a district court's decisions on jury instructions for abuse of discretion. *Aldridge v. Forest River, Inc.*, 635 F.3d 870, 876 (7th Cir. 2011). Reversal is warranted only if an instruction misstates the law in a way that misguides the jury to the extent that the complaining party suffered prejudice. *Hasham v. Cal. State Bd. of Equalization*, 200 F.3d 1035, 1051 (7th Cir. 2000).

The City concedes, as it must, that federal regulations unambiguously state that "[e]vidence of whether a particular function is essential includes, but is not limited to," time spent performing the function. 29 C.F.R. § 1630.2(n)(3); *see also Shell*, 789 F.3d at 718. The City offers several reasons for ignoring these regulations, but none are persuasive.

The City argues that, while the time-spent factor may be relevant in other situations, it is not relevant here because the emergencies that would force a street supervisor to drive a bus would infrequently occur. But the relevance of a given factor often waxes and wanes depending on the particular circumstances presented. That doesn't mean that the factor should be jettisoned completely. It simply means that the jury can take this into consideration and that the parties can tailor their closing arguments to accentuate or minimize the factors as they see fit. *See EEOC v. AutoZone, Inc.*, 809 F.3d 916, 923 (7th Cir. 2016) (holding that the district court "was not obligated to promulgate … an inference within the jury instructions that the job function was not essential for a particular reason," and that the court could "instead allow the [plaintiff] to make its … argument to the jury in its closing arguments"). Doing otherwise would impermissibly transfer

fact-finding responsibilities from the jury to the judge by narrowing the scope of the factual inquiry.

The City also points to our model jury instruction concerning essential functions, which it claims is silent regarding the amount of time spent performing job functions. *See* Seventh Circuit Pattern Jury Instructions § 4.05.[1] But as Brown correctly notes, the City ignores subsection d of the Committee's Comments, which not only cites § 1630.2(n) but also notes that "evidence of whether a particular function is essential can include … how much time was spent on the job performing the function." *Id.* § 4.05 cmt. d.

---

[1] Section 4.05 reads:

> Under the ADA, Plaintiff was "qualified" if he had the skill, experience, education, and other requirements for the job and could do the job's essential functions, either with or without [*describe requested accommodation*]. You should only consider Plaintiff's abilities at the time when [*describe challenged employment decision*].

> Not all job functions are "essential." Essential functions are a job's fundamental duties. In deciding whether a function is essential, you may consider the reasons the job exists, the number of employees Defendant has to do that kind of work, the degree of specialization the job requires, Defendant's judgment about what is required, the consequences of not requiring an employee to satisfy that function, and the work experience of others who held position.

> [In addition to specific job requirements, an employer may have general requirements for all employees. For example, the employer may expect employees to refrain from abusive or threatening conduct toward others, or may require a regular level of attendance.]

Seventh Circuit Pattern Jury Instructions § 4.05 (alterations in original).

Finally, the City claims that in *Basith v. Cook County*, 241 F.3d 919 (7th Cir. 2001), we held that the time-spent factor is irrelevant when "an employer has a valid reason for treating a job function as essential and that function goes to the core of the business's operation." But we announced no such rule in *Basith*. Rather, we concluded—after considering time spent and the other factors *in the aggregate*—that the job function at issue was essential. *Id.* at 928–30. Furthermore, just as no single factor enumerated in § 1630.2(n) can comprise the entire essential-function analysis, *see, e.g., id.*; *Shell*, 789 F.3d at 718, nor can a single factor be excluded before the analysis has even begun. So the district court did not abuse its discretion in instructing the jury to consider a street supervisor's time spent driving buses.

### C. Brown Mitigated Damages

Finally, the City argues that the district court erred in awarding Brown damages because he failed to take reasonable steps to mitigate his losses. We review a district court's findings regarding mitigation of damages for clear error. *Payne v. Sec. Sav. & Loan Ass'n, F.A.*, 924 F.2d 109, 111 (7th Cir. 1991).

A lost-wages award "compensates an unlawfully discharged employee for the loss of earnings that he sustains as a result of the discharge." *Mattenson v. Baxter Healthcare Corp.*, 438 F.3d 763, 771 (7th Cir. 2006); *EEOC v. Ilona of Hungary, Inc.*, 108 F.3d 1569, 1580 (7th Cir. 1997). Critically, a plaintiff alleging employment discrimination generally is required to mitigate damages by making diligent efforts to obtain reasonably comparable employment. *See Mattenson*, 438 F.3d at 771; *Williams v. Pharmacia, Inc.*, 137 F.3d 944, 954 (7th Cir. 1998). The employer generally bears the burden of

proving a failure to mitigate, which entails showing not only a lack of "reasonable diligence" but also "a reasonable likelihood that the plaintiff might have found comparable work by exercising reasonable diligence." *Hutchison v. Amateur Elec. Supply, Inc.*, 42 F.3d 1037, 1044 (7th Cir. 1994).

The City has failed to meet this burden. It faults Brown for failing to "seek any employment at any local transit companies"; however, it admitted at oral argument that CATS was the only bus company in town when Brown was fired. Nor has the City shown that any other transit company was within a reasonable driving distance of Brown's residence.

The City also faults Brown for starting his own company but ignores the fact that "self-employment, if reasonable, counts as permissible mitigation." *Smith v. Great Am. Restaurants, Inc.*, 969 F.2d 430, 438 (7th Cir. 1992). And based on the evidence from trial, there is little reason to doubt that Brown's business was a legitimate and reasonable attempt to make money. For one, hauling trailers across the country is certainly related to Brown's various positions at CATS, which involved driving, fixing, and supervising the operation of municipal buses. Moreover, during 2012, Brown made 63 trips over 187 days as he worked to establish his business. And he shut down operations not because he became bored with the work, but because he was unable to generate sufficient profits.

These efforts are readily distinguishable from the cases on which the City relies. In *Hansard v. Pepsi-Cola Metropolitan Bottling*, the court held that a former vending machine repairman had failed to adequately mitigate damages by operating a booth at flea markets on the weekend. 865 F.2d 1461,

1468 (5th Cir. 1989). In doing so, the court emphasized that the plaintiff "did not approach the flea market as a business," that the work "was never more than a part-time enterprise," and that the plaintiff was "fully capable of continuing his job search during the week." *Id.*; *cf. Smith*, 969 F.2d at 438 (distinguishing *Hansard* on identical grounds). And while the plaintiff in *Boyd v. SCM Allied Paper* operated his own barbeque and car wash business following his termination, there is no indication whether and to what extent these endeavors were related to his previous position, nor any discussion about how long the endeavors lasted or the time and resources the plaintiff devoted to them. No. 84-241, 1986 WL 15558, at *14–15 (N.D. Ind. June 16, 1986). So the district court did not clearly err in concluding that Brown had mitigated his damages.

### III. CONCLUSION

The judgment of the district court is AFFIRMED.