Hamilton, Circuit Judge, dissenting.
 

 This case raises the kind of issue about flexible working arrangements under the Americans with Disabilities Act that we are likely to see more often. I agree with a good deal of the majority's opinion but respectfully dissent on the bottom line in this case. Whether working five days a week in American Airlines' Dallas headquarters was an "essential function" of plaintiff Kimberly Bilinsky's job may well present a close question for a jury. It is not a close call on summary judgment. We should reverse the district court's grant of summary judgment and let a jury decide the issue.
 

 First, though, the points of agreement: the majority correctly points out that the ADA's affirmative duty of reasonable accommodation requires employers to make an effort to hire and retain employees with disabilities. Courts do not and should not merely take at face value an employer's claims about a job's essential functions. Ante at 572-73. This caution is consistent with our case law, which shows, as the majority also acknowledges, how fact-sensitive these questions about essential functions and reasonable accommodations can be. See
 
 Brown v. Smith
 
 ,
 
 827 F.3d 609
 
 , 613-14 (7th Cir. 2016) (affirming jury verdict for plaintiff who could not obtain commercial driver's license even where written job description said such license was required for job; evidence of actual duties undermined claim of essential function);
 
 Taylor-Navotny v. Health Alliance Medical Plans, Inc.
 
 ,
 
 772 F.3d 478
 
 , 489 (7th Cir. 2014) (affirming summary judgment for employer, who was not required to tolerate "erratic or unreliable attendance");
 
 Miller v. Illinois Dep't of Transportation
 
 ,
 
 643 F.3d 190
 
 , 198-99 (7th Cir. 2011) (reversing summary judgment for employer where evidence of actual work practices indicated accommodations plaintiff needed were reasonable).
 

 Further, the majority opinion correctly and helpfully warns that our comments in
 
 Vande Zande
 
 about working from home as a reasonable accommodation require a fresh look today, almost a quarter of a century later, as technology and working patterns have changed. Ante at 573-74, quoting
 
 Vande Zande v. Wisconsin Dep't of Administration
 
 ,
 
 44 F.3d 538
 
 , 545 (7th Cir. 1995).
 

 But returning to the specifics of this case, this record shows a genuine issue of material fact as to whether working in Dallas five days a week was actually an essential function of Kimberly Bilinsky's job. Her job had no written job description. Viewed through what should be the plaintiff-friendly lens of summary judgment, the thrust of defendant's evidence is simply that the vice president of Bilinsky's department
 
 preferred
 
 to have all employees work at the Dallas headquarters five days a week. I assume that arrangement would be easiest for him and other managers, but that's not the standard under the ADA.
 

 Bilinsky has presented substantial evidence that working from home four days a week, with a weekly trip to spend the day in the Dallas office, let her perform the essential functions of her job both before and after the merger. Bilinsky continued her work-from-home arrangement for fifteen months following the merger. She received good evaluations and no criticism. The only specific evidence American managed to offer was a claim that Bilinsky's work-from-home arrangement prevented her from helping the team organize and manage one special event, a leadership conference in Dallas in February 2015. Bilinsky counters that American never even asked her to help with the event.
 
 [1]
 

 The unusual absence of a written job description here should raise our eyebrows about this grant of summary judgment. I agree with the majority that the absence of a job description distinguishes Bilinsky's case from
 
 Gratzl v. Office of Chief Judges
 
 , where a position was eliminated and we held that the plaintiff could not prove she was qualified for her current job simply because she was qualified for a previous job.
 
 601 F.3d 674
 
 , 679-80 (7th Cir. 2010) ; cf.
 
 Brown
 
 ,
 
 827 F.3d at 613-14
 
 (affirming jury verdict for plaintiff despite written job description identifying as essential one qualification he could not meet; evidence showed qualification was for marginal, not essential, job functions). Bilinsky had performed successfully for years. There is no new position or new job description that American can point to as evidence that the essential functions of her job changed. American's evidence of management
 
 preferences
 
 simply does not distinguish between job functions that are essential and those that are only marginal. Its evidence does not show the absence of a genuine issue of material fact.
 

 While the merger may have posed new challenges for the department, the ADA requires employers to make reasonable sacrifices to keep disabled persons in the workforce. I view Bilinsky's situation as much more in line with the plaintiff in
 
 Miller v. Illinois Department of Transportation
 
 . Bilinsky worked on a team, and according to her immediate supervisor, Linda Carlson, Bilinsky was "always willing" to "pick up the slack or to do a project." The only qualification Carlson offered was that Bilinsky's work-from-home arrangement meant she "wasn't able to do things that you needed to do to support an event," referring to the one conference that American, we must assume, did not even ask Bilinsky to help with. American did not offer conclusive evidence of essential functions that were inconsistent with Bilinsky's successful work-from-home arrangement.
 

 As the Sixth Circuit recently explained, "full-time presence at work is not an essential function of a job simply because an employer says that it is."
 
 Hostettler v. College of Wooster
 
 ,
 
 895 F.3d 844
 
 , 857 (6th Cir. 2018) (reversing summary judgment for employer; facts disputed as to whether employee could do job's essential functions on modified work schedule). As in
 
 Hostettler
 
 , American may have preferred that Bilinsky
 

 be in the office 40 hours a week. And it may have been more efficient and easier on the department if she were. But those are not the concerns of the ADA: Congress decided that the benefits of gainful employment for individuals with disabilities-dignity, financial independence, and self-sufficiency, among others-outweigh
 simple calculations of ease or efficiency. To that end, the ADA requires that employers reasonably accommodate employees with disabilities, including allowing modified work schedules.
 

 Id.
 

 at 857
 
 .
 

 Bilinsky's situation is much like that of the employee in
 
 EEOC v. McLeod Health, Inc.
 
 ,
 
 914 F.3d 876
 
 , 881-82 (4th Cir. 2019), where the Fourth Circuit reversed summary judgment for the employer, finding among other points a genuine issue of material fact concerning whether it was an essential function of the employee's job to travel around to different job sites. Like Bilinsky, the employee in
 
 McLeod Health
 
 wrote and edited an internal newsletter. The employer there at least had a written job description, but it did not mention traveling to and from company events or conducting in-person interviews.
 

 Id.
 

 at 881
 
 . In reversing summary judgment for the employer, the Fourth Circuit explained that, while the record contained evidence supporting the employer's position, the written job description's silence on the supposedly essential function provided substantial evidence that it was not in fact an essential function.
 

 Id.
 

 at 881-82
 
 .
 

 In this case, the majority sidesteps delicately around the district judge's erroneous reference to "weighing" the evidence on summary judgment, ante at 572 n.1, but the majority then makes essentially the same mistake. On summary judgment, it is not our job to decide which party's evidence is more persuasive. A jury should weigh the evidence and determine whether working from Dallas five days a week was actually an essential function of Bilinsky's job after the merger.
 

 We should not assume that Bilinsky would have refused a request or order to work in Dallas for a few days to help with that conference. Dallas in February is unlikely to be hotter than Chicago in the summer.