

# In the Missouri Court of Appeals
# Eastern District
### DIVISION THREE

STEVEN LOERCH,

    Appellant,

vs.

CITY OF UNION MISSOURI,

    Respondent.

)
)
)
)
)
)
)
)
)
)
)
)

No. ED109707

Appeal from the Circuit Court
of Franklin County
Cause No. 17AB-CC00071-01

Honorable Sonya D. Brandt

Filed: February 15, 2022

### OPINION

Stephen Loerch ("Plaintiff") appeals from the summary judgment entered in favor of the City of Union ("Defendant") on his petition claiming disability discrimination under the Missouri Human Rights Act ("MHRA"), § 213.010, *et seq.*[1] Defendant moved for summary judgment on the ground that Plaintiff does not have a "disability" as that term is defined in the MHRA. In his sole point on appeal, Plaintiff contends the material facts are genuinely disputed and Defendant is not entitled to judgment as a matter of law. We reverse and remand.

### I. Background

Plaintiff was a long-time employee of Defendant, working as a custodian at the City Hall building from 1990 to 1992 and again from 2007 until 2015. In the intervening years, Plaintiff

---

[1] All statutory references are to Mo. Rev. Stat. Cum. Supp. (2018), unless otherwise noted.

1

worked as a laborer in other city departments. Plaintiff's responsibilities as the sole City Hall custodian included indoor and outdoor tasks. According to the written job description, the work was "mostly in office settings." It listed the following outdoor tasks as part of the custodian's "Principal Duties and Responsibilities":

- Wash windows, inside and out, twice a month;
- Maintain grounds by mowing lawns, trimming shrubs, and raking leaves;
- Apply fertilizer and/or weed killer to lawn as needed;
- Water lawn and outdoor plants as needed;
- Sweep sidewalk, steps[,] and ramp;
- Pick up any trash;
- Remove snow and ice from sidewalk, steps[,] and ramp immediately after each snowfall.

The written job description also stated:

> The work environment characteristics described here are representative of those an employee encounters while performing the essential functions of this job. . . .
>
> While performing the duties of this job, the employee occasionally works in outside weather conditions mostly during daylight hours but occasionally during night-time hours. The employee is frequently exposed to extreme summer heat, extreme winter cold, wet and/or humid conditions and outdoor airborne particles.

Plaintiff's supervisor testified that the written job description was accurate and estimated that, while the majority of the custodian's time was spent working indoors, 25% of the time was spent working outdoors. Plaintiff disagreed. He testified that, contrary to the written description, he was not "frequently" exposed to extreme temperatures and estimated he spent only 10% of his time working outside. Plaintiff and the supervisor agreed that he had discretion to order his workday, and had at times started his workday as early at 5:00 a.m.

In 2013, Plaintiff was diagnosed with coronary artery disease ("CAD"), but continued working for Defendant as a custodian without incident. In 2015, Plaintiff underwent a physical in order to be considered for a laborer position with the parks department. In a letter to Plaintiff's supervisor, the doctor who performed the physical stated that Plaintiff "is cleared to remain at his

current job and activities" but should "not go to any position where he will be exposed to extreme heat or cold environment." The doctor's "recommendation" was for Plaintiff to "maintain his current position."

Plaintiff's supervisor put him on light duty, restricting him from performing his outdoor duties. Plaintiff disagreed that his restriction meant he could no longer perform *any* outdoor duties. He asserted that he could perform "virtually all" of his outdoor duties without exposure to extreme temperatures. For instance, he could continue to mow early in the day to avoid exposure to extreme heat, which he said had been his practice. Plaintiff also asked if another employee could be assigned to the task of mowing. Plaintiff believed the only duty that potentially would expose him to extreme conditions was snow and ice removal and asked that another employee be assigned to that task. In the past, other employees had assisted with snow and ice removal and performed that and other tasks for Plaintiff when he was absent from work.

Plaintiff's requested accommodations were denied, and he claims he was told he had to retire or be terminated. After he retired, he filed the instant lawsuit claiming that he was terminated or constructively discharged because of his disability in violation of the MHRA. Defendant moved for summary judgment on the ground that the undisputed facts negate that Plaintiff has a "disability" as that term is defined in the MHRA. Specifically, Defendant contended that Plaintiff's CAD does not substantially limit him from the major life activity of working and that there was no reasonable accommodation that would have enabled Plaintiff to work outside in extreme temperatures, which was an essential function of the custodian job. The trial court granted summary judgment, and this appeal follows.[2]

---

[2] The current summary judgment was entered after this Court dismissed an appeal from an earlier order granting the summary judgment motion, after determining it was not a final appealable judgment. *See Loerch v. City of Union*, 601 S.W.3d 549, 553 (Mo. App. E.D. 2020).

## II.      Standard of Review

Review of a summary judgment is *de novo. ITT Commercial Finance Corp. v. Mid–America Marine Supply Corporation*, 854 S.W.2d 371, 376 (Mo. banc 1993). As the movant, Defendant bears the initial burden of setting out the uncontroverted material facts and demonstrating that judgment as a matter of law flows from those material facts. *See Blackwell Motors, Inc. v. Manheim Services Corporation*, 529 S.W.3d 367, 373 (Mo. App. E.D. 2017) (citing *Columbia Mutual Insurance Company v. Heriford*, 518 S.W.3d 234, 240 (Mo. App. S.D. 2017)). If that prima facie summary judgment burden is not met, then the analysis ends and the motion must be denied. *See Columbia,* 518 S.W.3d at 241. If that initial burden is met, then the opposing party can overcome summary judgment by demonstrating either that there is a genuine dispute over the material facts or that the undisputed facts do not establish the right to judgment as a matter of law. *See id.* at 241–42. Facts come into the summary judgment record only via the numbered paragraphs and responses required by Rule 74.04(c).[3] *Green v. Fotoohighiam*, 606 S.W.3d 113, 116 n.5 (Mo. banc 2020) (noting, as other courts have, that the version of Rule 74.04(c) in effect at the time *ITT* was decided did not contain the same requirement).

We will affirm if the judgment is proper based on any ground raised in the motion and supported by the accompanying summary judgment record. *Clark v. Kinsey*, 488 S.W.3d 750, 756 (Mo. App. E.D. 2016). Summary judgment is seldom appropriate in employment discrimination cases "because such cases are inherently fact-based[.]" *Daugherty v. City of Maryland Heights*, 231 S.W.3d 814, 818 (Mo. banc 2007), *abrogated on other grounds by* § 213.101.4.[4]

---

[3] Missouri Supreme Court Rules (2018).

[4] *Daugherty* and its progeny were abrogated "as they relate to the contributing factor standard and abandonment of the burden-shifting framework." § 213.101.4.

III.    Discussion

It is unlawful under the MHRA for an employer to discharge an employee because of that employee's disability. § 213.055.1(1)(a). As a threshold element of his MHRA claim, Plaintiff must prove that his CAD is a "disability" within the meaning of that act. *See Medley v. Valentine Radford Communications, Inc.*, 173 S.W.3d 315, 321 (Mo. App. W.D. 2005). In relevant part, "disability" is defined in the MHRA as "a physical or mental impairment" that "substantially limits one or more of a person's major life activities" and that "with or without reasonable accommodation does not interfere with performing the job." § 213.010(5). As further defined in the relevant regulations, the employee must be able to perform the "essential functions" of the job with or without a reasonable accommodation. 8 CSR 60-3.060(1)(F). In other words, if despite the substantial limitation the physical impairment otherwise causes, the employee can perform the essential functions of his job with or without a reasonable accommodation, then he has a "disability" for purposes of the MHRA.

There is no dispute that Plaintiff's CAD is a "physical impairment." But Defendant contends the undisputed facts show that (a) Plaintiff's CAD does not substantially limit a major life activity and (b) there was no reasonable accommodation that would have enabled Plaintiff to perform the essential functions of the custodian job. We disagree.

A.    **Substantial Limitation on Major Life Activities**

The first aspect of the threshold inquiry is whether Plaintiff's CAD substantially limits a major life activity. One such "major life activity" is the activity of working. *See* 8 CSR 60-3.060(1)(C); *State ex rel. Sir v. Gateway Taxi Management Company*, 400 S.W.3d 478, 490 (Mo. App. E.D. 2013).[5] A substantial limitation on the major life activity of working means the person

---

[5] Only one major life activity need be substantially limited under the MHRA's definition of "disability." § 213.010(5). Therefore, we do not address the argument that Plaintiff's cardiovascular function itself also constitutes

is "significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes." *Daugherty*, 231 S.W.3d at 821-22 (internal quotation marks and citations omitted). The inability to perform a single, particular job does not amount to a substantial limitation. *Id.*

Defendant contended in the summary judgment motion that Plaintiff's restriction from working outdoors in extreme temperatures does not amount to a substantial limitation on employment because Plaintiff can still work in many jobs across a broad range of job classes. To support its right to judgment on this ground, Defendant relied entirely on the fact that since leaving Defendant's employ, Plaintiff has found two jobs that require no outdoor work, as a bagger at a grocery store and a floor technician/night custodian at a hospital. Even though that fact is undisputed, Plaintiff's ability to find those two particular jobs does not *negate* a finding that Plaintiff is substantially limited in his ability to work. Just as the inability to perform a particular job does not amount to a substantial limitation, the ability to find a particular job does not preclude a finding that Plaintiff is substantially limited in the major life activity of working. *See Gallegos v. Swift & Company*, 237 F.R.D. 633, 647 (D. Colo. 2006).[6] Such evidence may be probative on this issue, but alone does not establish Defendant's right to summary judgment. *See id.* "The key to summary judgment is the undisputed right to judgment as a matter of law; not simply the absence of a fact question." *ITT*, 854 S.W.2d at 380.

### B.      Essential Functions and Reasonable Accommodation

---

a "major life activity" under the MHRA, as it does under the federal Amendments Act to the Americans with Disabilities Act ("ADAAA") and regulations promulgated thereunder. *See* 42 U.S.C. § 12102(2)(B) (2009) (definition of "major life activity" expressly includes "the operation of a major bodily function"); *see also* 29 C.F.R. § 1630.2(i)(1)(ii) (2012) ("major life activities" include cardiovascular functions).

[6] In an MHRA case, our courts are guided by both Missouri law and applicable federal employment discrimination cases to the extent they are "consistent with Missouri law." *Daugherty*, 231 S.W.3d at 818.

The second aspect of the threshold inquiry is whether, with or without reasonable accommodation, Plaintiff was able to perform the essential functions of his job. *See* § 213.010(5); *see also* 8 CSR 60-3.060(1)(F). It is undisputed that without an accommodation, Plaintiff cannot work outdoors in extreme temperatures. Thus, the only questions are (1) whether performing tasks in extreme temperatures was an essential function of the custodian job and (2) whether the proposed accommodation of assigning other employees to perform those tasks was reasonable. In its motion for summary judgment, Defendant claimed the undisputed facts showed that working in extreme heat and cold was an essential function of the custodian job and that the proposed accommodation of having another employee perform that function is unreasonable as a matter of law. We disagree.

### 1.    Essential Function

For purposes of the threshold disability inquiry, the only functions that must be deemed essential are only those that the impairment substantially *interferes* with the employee's ability to perform. *See* § 213.010(5). That is, the essential function analysis is necessarily limited to whether the *restricted* function--the aspect of the job the employee *cannot* do--was essential. Here the only aspect of the job Plaintiff could not do was working outdoors in extreme temperatures.[7] Thus, the proper focus of the analysis asks whether it was essential that he be able to do so. In other words, even if a particular *task* was essential, but it was not essential that it be performed when it was extremely hot or cold, then Plaintiff would have still been able to perform that essential task. Defendant contends the evidence shows that the outdoor tasks in the written

---

[7] Defendant refers to a disagreement Plaintiff and his supervisor had upon receiving the doctor's restriction, arguing that it was entitled to rely on the doctor's opinion, over Plaintiff's subjective belief, about what he could and could not do and noting that to the extent Plaintiff disagreed with the doctor's opinion, it was his burden to clarify it. But Plaintiff never suggested that, contrary to the doctor's opinion, he *can* actually work outdoors in extreme temperatures; rather, he only pointed out that despite that restriction he could still perform virtually all of his duties in non-extreme weather. This is not a disagreement about the scope of the restrictions, but whether they actually interfere with essential functions.

job description are essential to the custodian job and because he cannot perform those tasks "at all times," he cannot perform the essential functions of the job. But that argument begs the same question: is it essential that Plaintiff be able to perform the outdoor tasks at *all* times, even in extreme weather?

In general, "essential functions" refer to those "fundamental job duties" of the position. 29 C.F.R. § 1630.2(n)(1) (2012).[8] The following factors are relevant when determining whether the function at issue is "essential":

> (1) the employer's judgment as to which functions are essential; (2) written job descriptions prepared before the employer began advertising or interviewing for the position; (3) the amount of time on the job spent performing the function; (4) the consequences of not requiring the employee to perform the function; and (5) the past or current work experience of employees in similar jobs.

*Daugherty*, 231 S.W.3d at 822 (citing 29 C.F.R. § 1630.2(n)(3) (2012)). Each of the above is "but one factor" to consider when determining if a particular function is essential. *See McKinney v. Mercy Hospital St. Louis*, 604 S.W.3d 680, 688 (Mo.App. E.D. 2020); *Shell v. Smith*, 789 F.3d 715, 718-19 (7th Cir. 2015). Ultimately, what constitutes an essential function "depends on the totality of the circumstances." *Rodal v. Anesthesia Group of Onondaga, P.C.*, 369 F.3d 113, 120 (2d Cir. 2004).

Defendant relied in its summary judgment motion on the written description's statement that the custodian job required frequent exposure to extreme heat and cold. It also cited the written list of outdoor activities set forth earlier in this opinion, though that list does not itself indicate whether any of those tasks had to be performed in extreme temperatures. Defendant also cited the supervisor's testimony that the written job description was accurate and his estimation that a quarter of Plaintiff's time was spent outdoors, but that testimony was not specific to how

---

[8] "Essential function" is not defined in the Missouri regulations.

much time he was required to spend working in extreme weather. As to the consequences of Plaintiff not performing this function, Defendant focuses on what occurred when Plaintiff was absent from work in the past and others had to fill in for him, since he was the only City Hall custodian. On appeal, Defendant claims this arrangement "highlights" the importance of the "outdoor duties"; in the summary judgment motion, Defendant pointed to evidence that the arrangement "put a strain on" the parks department and caused them to have "trouble meeting their duties" and "caused different disruptions" for City Hall when its employees filled in for Plaintiff. None of these arguments and evidence are focused on the pertinent consequence at issue here: the impact of Plaintiff's inability to perform *only* those tasks that had to be completed when the temperatures were extreme.

While an employer's judgment and the written job description are certainly relevant factors in determining what is essential, courts also consider evidence of the employer's actual practices. *See Shell*, 789 F.3d at 718-19 (finding that the amount of time actually spent on function could reasonably lead a factfinder to discount employer's judgment or written job description). Plaintiff responded to the above facts with evidence that despite what the written job description said, in practice the custodian's exposure to extreme heat and cold was not frequent. Plaintiff testified that the written job description statement regarding frequent exposure to extreme temperatures was inaccurate. Plaintiff estimated that only 10% of the work was performed outdoors and, thus, he was not even outdoors "frequently," much less in extreme temperatures. In fact, as to extreme heat, Plaintiff said he always was able to complete outdoor jobs early in the day before it got too hot; as Defendant pointed out in reply, his supervisor, however, recalled seeing him mow the grass during the hottest part of the day. Mowing was seasonal and occurred at least once a week during that season, but it was disputed how long it

9

took to complete the mowing (Plaintiff said 30 to 45 minutes, and his supervisor said an hour). Plaintiff agreed that removal of snow and ice might have to be performed in the extreme cold, but estimated that it only snowed three or four times a year. Again his supervisor's estimate was higher, recalling six to eight snow events in 2015, some of which required removing snow or ice multiple times per event. There was also conflicting evidence regarding how much time it actually took to remove snow.

Defendant does not disagree that the amount of time spent on the function is relevant to the essential function analysis. But it cites *City of Clayton v. Missouri Commission on Human Rights,* for the proposition that a job function may still be essential even if the overall proportion of time spent on that function is relatively small. 821 S.W.2d 521 (Mo. App. E.D. 1991). In *City of Clayton*, the commission said shoveling was not an essential function of the custodial position solely based on the fact that the amount of time spent shoveling in a year was "proportionately so insignificant." *Id*. at 529. On review for substantial evidence to support that determination, this Court found the commission abused its discretion because there was evidence that, regardless of the amount of time spent on it each year, clearing snow was a "vital priority" to the employer. *Id*. Here--under a completely different summary judgment standard--we conclude only that evidence about the amount of time actually spent in extreme temperatures is material and genuinely in dispute, precluding a determination at this stage that this function was essential.

Because there are genuine disputes regarding facts material to the essential function analysis, summary judgment is inappropriate. Even if the facts were undisputed and showed that working in extreme temperatures was an essential function of his custodian job, Plaintiff contends he can perform that function with a reasonable accommodation. Thus, we turn to

10

Defendant's claim in the summary judgment motion that the proposed accommodation is unreasonable as a matter of law.

## 2. Reasonable Accommodation

The accommodation Plaintiff sought in this case was having another employee conduct those tasks that he could not do, which would be limited to those that had to be performed during extreme weather.[9] Accommodations under the MHRA may include "[j]ob restructuring, part-time or modified work schedules, acquisition or modification of equipment or devices, the provision of readers or interpreters and other similar actions." 8 CSR 60-3.060(1)(G)2.B. The accommodation must be "reasonable," and "an accommodation that imposes undue financial and administrative burdens or requires fundamental alterations is not reasonable." *Lomax v. DaimlerChrysler Corporation*, 243 S.W.3d 474, 480 (Mo. App. E.D. 2007). The regulations set out a list of non-exhaustive factors to be considered when determining whether an accommodation is reasonable, including the nature and cost of the accommodation and the size and nature of a business. 8 CSR 60-3.060(1)(G)3. But whether a particular proposed accommodation is reasonable "requires an individual assessment" and "is dependent upon the facts of each case." *Lomax*, 243 S.W.3d at 480-81.

In support of its motion for summary judgment, Defendant did *not* point to facts in the record showing the proposed accommodation would place an undue financial or administrative burden on it or require a fundamental alteration of the custodian's job.[10] Instead, Defendant

---

[9] Although Plaintiff also suggested he could avoid the extreme heat altogether by completing tasks earlier in the day, that would still not obviate the need for others to fill in when extreme temperatures could not be avoided.

[10] Defendant asserted (in the reply memorandum in support of the motion) that the proposed accommodation was a fundamental alteration to the job and an undue administrative and financial burden, but none of the "facts" underlying these arguments were supported with citations to the summary judgment record. Similarly unsupported is Defendant's mention on appeal of the limited capacity and resources of a small city government generally, citing to no such facts in the summary judgment record about the City of Union in particular. Finally, to the extent there is any evidence in the summary judgment record relating to the burden of other employees taking on tasks during

11

relied on the proposition that, as a matter of law, assigning other workers to perform tasks for Plaintiff is unreasonable. We disagree.

First, none of the Missouri cases on which Defendant relies are on point. *Reed v. Kansas City Missouri School District* involved the alleged erroneous admission of certain evidence in a jury trial. 504 S.W.3d 235, 246 (Mo. App. W.D. 2016). In discussing the impact that evidence had on the jury's verdict, the court first cited all of the evidence that showed no accommodation would allow the employee to perform her job. *Id.* at 247. Then it added that the employer's failure "to transfer her to . . . or hire additional staff could certainly be perceived as unreasonable." *Id.* Commenting that the jury could have found the proposed accommodation of hiring more staff unreasonable is hardly the equivalent of holding that such accommodation is unreasonable as a matter of law for purposes of summary judgment. Moreover, *Reed* is distinguishable not only because of its different procedural posture, but also on its facts: there is no evidence here that Plaintiff's proposed accommodation included transferring him to another position, and whether it would require hiring additional employees is disputed.

*Umphries v. Jones* is equally unavailing to Defendant. There, the employee asked to have another employee bumped out of his position and into hers, allowing her to be transferred into the vacancy created by that reassignment. 804 S.W.2d 38, 41 (Mo. App. E.D. 1991). This Court concluded--on reviewing an agency decision for competent and substantial evidence--that the record showed the proposed reassignment would have conflicted "with established school board policy and considerations of seniority in assignments." *Id.* We stated that a "[r]easonable accommodation does not require the employer to reassign an employee or to restructure a job in a way that would usurp the legitimate rights of other employees." *Id.* The proposed

---

Plaintiff's absences from work, that is not necessarily indicative of the burden associated with having others perform *only* those tasks Plaintiff could not perform because of extreme weather.

12

accommodation in this case is significantly narrower than the one *Umphries*. Here, Plaintiff asked only that certain tasks be assigned to other employees, and unlike in *Umphries*, Defendant put forth no evidence that the "legitimate rights of other employees" would be "usurped" by that accommodation. *See also Folsom v. Missouri State Highway Patrol*, 580 S.W.3d 645, 651 (Mo. App. W.D. 2019) (cited by Defendant and discussing only reassignment of the employee to another position, not assigning others to do tasks that employee could not do).

The above cases simply do not support Defendant's proposition that assigning others to do the tasks Plaintiff could not do is unreasonable as a matter of law. In fact, such a *per se* rule has been *rejected* by Missouri courts in favor of a case-by-case approach to determining the reasonableness of accommodations. In *Lomax*, the employer argued that an undefined leave of absence is a *per se* unreasonable accommodation. 243 S.W.3d at 481. This Court did not agree: "[w]hether any particular proposed accommodation is unreasonable is dependent upon the facts of each case." *Id.* (pointing out that while some employers might deem such an accommodation unreasonable, there was evidence the employer in that case did not); *see also Sherry v. City of Lee's Summit*, 623 S.W.3d 647, 654-55 (Mo. App. W.D. 2021) (rejecting argument that a leave of absence is an unreasonable accommodation as a matter of law and reiterating that reasonableness of an accommodation is a "question of fact"); *see also Wells v. Lester E. Cox Medical Centers*, 379 S.W.3d 919, 924 (Mo. App. S.D. 2012).

In *Baldridge v. Kansas City Public Schools*, the employer claimed that providing an employee with a full-time assistant at work was a *per se* unreasonable accommodation. 552 S.W.3d 699, 710 n.9 (Mo. App. W.D. 2018). The employer in *Baldridge* relied on *Jewell v. Blue Valley Unified School District,* in which a federal district court deemed a request for a full-time assistant unreasonable, stating that federal courts of appeals "have consistently held that

employers are not required to assign existing employees or hire new employees to perform certain functions or duties" of an employee's job. 210 F.Supp.2d 1241, 1251 (D. Kan. 2002).[11] Although the court in *Baldridge* did not "have to reach" the reasonableness of the proposed accommodation,[12] *id*. at 710 n.8, it nevertheless stated that *Jewell* was non-binding and distinguishable, noting that "[u]nder Missouri law, whether any particular accommodation is reasonable or unreasonable is dependent on the facts of the individual case." *Id*. at 710 n.9.

Defendant in this case also cites *Jewell* and other federal cases that refer--in one way or another--to the principle that under the ADA, employers are not required to accommodate an employee by assigning others to assist with or perform the essential functions of the employee's job. *See Moritz v. Frontier Airlines, Inc.*, 147 F.3d 784, 788 (8th Cir. 1998) (finding request for an assistant to help with employee's duties unreasonable because an employer "is not obligated to hire additional employees or reassign existing workers to assist" an employee); *Mole v. Buckhorn Rubber Products, Inc.*, 165 F.3d 1212, 1218 (8th Cir. 1999) (finding request to hire additional employee unreasonable because an "employer is not required to hire additional employees or redistribute essential functions to other employees," citing *Moritz*); *Minnihan v. Mediacom Communications Corporation*, 779 F.3d 803, 813 (8th Cir. 2015) (finding request that required other employees to work more hours unreasonable because it would cause other employees to work harder, longer, or be deprived of opportunities, which is not mandated under the ADA); *Gardea v. JBS USA, LLC*, 915 F.3d 537, 542 (8th Cir. 2019) (finding request that required extensive assistance with common tasks unreasonable, citing that ADA does not

---

[11] *Jewell* had been cited by the Western District a couple of years earlier in *Reed*, but only as an example to support its comment that the accommodation of hiring additional staff could be found unreasonable. *Reed*, 504 S.W.3d at 247.

[12] *Baldridge* involved a claim that removal of the employee's accommodation--namely, a full-time paraprofessional to assist the employee with numerous tasks at work--created a hostile work environment. 552 S.W.3d at 704-05, 716. In that type of claim, whether the employer's conduct created such an environment does not depend on whether the removed accommodation was reasonable. *Id*. at 710-11.

mandate other employees to work harder, longer, or be deprived of opportunities); *Higgins v. Union Pacific Railroad Company*, 931 F.3d 664, 671 (8th Cir. 2019) (finding request for time off unreasonable because it would require other employees to work additional shifts, citing case law that assigning others to help an employee is not a reasonable accommodation).

To the extent these cases stand for the proposition that assigning others to perform certain tasks for an employee can *never* be reasonable as a matter of law under the ADA, they are inconsistent with the individualized, fact-dependent, case-by-case approach taken by Missouri courts when determining the reasonableness of an accommodation under the MHRA and are not applicable here. *See Daugherty*, 231 S.W.3d at 818 (stating that federal cases *consistent* with Missouri law can provide guidance in MHRA cases). As indicated in the parentheticals above, many of these cases are also distinguishable on their facts because they involved accommodations that required full-time or extensive assistance, hiring additional employees, or adding hours and shifts to existing employees' schedules. As noted earlier, Defendant relied on no such similar--much less undisputed--evidence here to demonstrate the unreasonableness of Plaintiff's requested accommodation.

## IV.    Conclusion

Defendant failed to demonstrate a right to summary judgment based on undisputed facts negating that Plaintiff has a disability under the MHRA: (a) it failed to show a right to judgment stemming from the undisputed facts regarding the substantial limitation Plaintiff's CAD has on the major life activity of working; (b) it failed to show that the facts material to the essential function analysis were undisputed or, stated another way, Plaintiff showed that those facts were genuinely disputed; and (c) it failed to demonstrate that the requested accommodation here was unreasonable as a matter of law.

The point on appeal is granted. The summary judgment is reversed, and the case is remanded for further proceedings.

_____
Colleen Dolan, J.

Philip M. Hess, P. J., concurs.
Angela T. Quigless, J., concurs.

16