In the

# United States Court of Appeals

## For the Seventh Circuit

———————————

No. 19-2730

JANET KOTASKA,

*Plaintiff-Appellant,*

*v.*

FEDERAL EXPRESS CORPORATION,

*Defendant-Appellee.*

———————————

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 1:16-cv-09321 — **Robert M. Dow, Jr.**, *Judge.*

———————————

ARGUED APRIL 13, 2020 — DECIDED JULY 17, 2020

———————————

Before SYKES, *Chief Judge*, and HAMILTON, and ST. EVE, *Circuit Judges*.

ST. EVE, *Circuit Judge*. Federal Express Corporation (FedEx) twice fired Janet Kotaska because she could not lift up to 75 pounds. The first time, she was limited to lifting only 60 pounds after a shoulder injury. Eventually, her condition improved so that she could lift 75 pounds to her waist, and a FedEx supervisor rehired her "off the books." Within three

weeks, though, FedEx discovered her capabilities above the waist remained severely limited and dismissed her again.

Kotaska contends that this second dismissal was a violation of the Americans with Disabilities Act (ADA), 42 U.S.C. §§ 12101–12213. The district court entered summary judgment for FedEx because Kotaska had not shown she was a qualified individual or that the second dismissal was in retaliation for her complaints about the first. Because we agree that Kotaska has not carried her burden, we affirm the judgment.

**I**

FedEx is a delivery company that employs couriers and handlers at its distribution center in Cary, Illinois. Couriers deliver and pick up packages for FedEx customers. Handlers are tasked with unloading packages from large shipping containers transported to the facility each morning so the couriers can place the packages on their trucks for delivery. In the evening, handlers unload new packages from the trucks and reload the containers. A handler needs to unload at a pace of roughly 1,000 packages per hour and load more than 400 per hour to keep FedEx on its schedule.

The Cary facility accepts packages weighing up to 150 pounds, although it also delivers documents and other small items weighing ounces, leading to an average weight of 15 pounds. For the heaviest packages, FedEx provides tools or has two people work together to move them. Per the job description, though, each handler or courier is expected to lift packages weighing up to 75 pounds by herself.

That an employee must lift up to 75 pounds leaves an obvious question: how high? The job description does not say. The shipping containers could be up to 8' tall, with packages

stacked up to the top. Inside the trucks, the shelves could be as high as 4'6" above the floor. Based on these facts, FedEx asserts, and its management testified, that a handler needs to be able to lift a 75-pound package above her shoulders, or even her head. Two couriers attested that they would never lift 75 pounds that high. Instead, they explained, packages that heavy would usually be placed on the floor or lower shelf of the trucks and would not be at the top of a container, crushing those beneath it. Moreover, the handlers would use heavy, sturdy packages as step stools or carefully topple stacks to minimize reaching where possible. The couriers were not asked what weights a handler *would* need to lift to any given height and so their testimony on that point was vague. One explained that 30-pound packages could be at the top of the container or on the top shelf of the truck. The other said only that he had "probably" lifted a 15-pound package overhead and that placing a 30-pound package at shoulder-height was close to the limit before he worried another employee might have trouble getting it back down.

Kotaska first began working for FedEx in 1998. FedEx hired her as a hybrid courier-handler but soon promoted her to courier. In 2011, however, she slipped on ice while out on delivery and injured her right shoulder.

Six months after Kotaska underwent surgery on her shoulder, her doctor declared that she had reached maximum medical improvement and would continue to have permanent restrictions. She could lift only 60 pounds from the floor to her waist. Between her waist and shoulder, she was limited to 30 pounds occasionally and 15, frequently. Her doctor placed the most stringent restrictions on lifting above her shoulder: only

5 pounds frequently, though she could occasionally lift 15, if she used both hands.

With this information, FedEx notified Kotaska that she appeared unable to perform the essential functions of a courier. It informed her she had 90 days to request accommodation or apply to another position. She applied to a handler position, but FedEx concluded it could not accommodate her, as the job required lifting up to 75 pounds. After FedEx terminated Kotaska's employment in August 2013, she disputed her dismissal through the company's internal procedures.

After her dismissal, Kotaska regularly applied to courier positions with FedEx to no avail. Then, in March 2015, she received a call from Jennifer Charles, the FedEx supervisor who had initially hired her.

Charles said she needed Kotaska to come back as a handler, since she was a reliable employee. Kotaska, however, wanted the courier position and refused, until Charles promised "off the books" and "behind closed doors" that she would be repromoted to courier after three weeks as a handler. (Charles denies this promise.) Kotaska then accepted an offer for the handler job before she even applied.

When she did apply, a few days later, she affirmed that she was capable of "repetitive lifting and lowering of packages that may weigh up to 75 pounds in a fast-paced environment." This was an accurate statement, Kotaska contends, because her doctor had amended her medical restrictions. She could now lift up to 75 pounds to her waist frequently. Her limits above the waist remained as strict as before. She could still lift only 5 pounds overhead, or 15 using two hands, with

"limited frequency." Between waist and shoulder, she was still limited to 15 pounds frequently, 30 pounds occasionally.

Kotaska began her handler duties in April 2015 and worked for just under three weeks. During this period, no one complained of her performance, which was by all accounts exemplary. A courier, though, said she asked Kotaska for help with an oversized package, but Kotaska responded that her shoulder prevented her from helping. Kotaska denies this happened and insists that she had no problems.

The courier's story bounced through various levels of management (some of whom knew Kotaska and were already curious whether her injuries had healed) before reaching Brad Fowler, a human capital advisor for FedEx. Concerned, Fowler instructed Charles and the Cary facility's senior manager to accommodate Kotaska temporarily while he investigated how she had been rehired without providing updated medical documentation. The supervisors, however, ignored Fowler's command, as they had no way to accommodate her.

Kotaska worked another week without incident until Fowler wrote her a letter that stated she had been complaining to management about problems with her shoulder (though she had not). Fowler noted her medical restrictions on file and asked Kotaska if she had an update. After receiving her new restrictions a few days later, Fowler determined that Kotaska was still incapable of performing the essential functions of a handler and put her on leave. FedEx again told her she could seek accommodation or apply to another job within 90 days.

She was unsuccessful with both endeavors. Although Kotaska did not ask for accommodation, a committee reviewed

whether it could accommodate her anyway. In its decision, it discussed her entire employment history, including her dispute about her prior termination, and concluded that it could not accommodate her. The handler job, according to the committee, required lifting up to 75 pounds over the waist and overhead. She also applied to three courier positions but was not hired.

After exhausting her administrative remedies, Kotaska brought this suit alleging disability discrimination as well as retaliation. She further alleged age and sex discrimination but has abandoned those claims on appeal.

The district court entered summary judgment for FedEx. It acknowledged there was a genuine dispute whether lifting a 75-pound package over the waist or head was an "essential function" of the handler position, but it concluded the dispute was immaterial. Kotaska had provided no evidence from which to infer that she could perform the essential functions of the handler position without exceeding her medical restrictions. She also had no evidence of any causal connection between her internal complaints and her dismissal. After unsuccessfully moving for reconsideration, Kotaska appealed.

## II

We review the entry of summary judgment de novo, considering the evidence in the light most favorable to Kotaska, the nonmovant. *See Bilinsky v. Am. Airlines, Inc.*, 928 F.3d 565, 569 (7th Cir. 2019). Under the ADA, a covered employer is prohibited from "discriminat[ing] against a qualified individual on the basis of disability." 42 U.S.C. § 12112(a). A qualified individual is one who "can perform the essential functions of the employment position" either "with or without reasonable

accommodation." *Id.* § 12111(8). At summary judgment, it is the plaintiff's burden to provide evidence such that a rational jury could find her to be a qualified individual. *Wheatley v. Factory Card & Party Outlet*, 826 F.3d 412, 418 (7th Cir. 2016); *Miller v. Ill. Dep't of Corr.*, 107 F.3d 483, 484 (7th Cir. 1997).

Whether a function is essential is a question of fact, not law. *Brown v. Smith*, 827 F.3d 609, 613 (7th Cir. 2016). We are obligated to consider the employer's judgment and to consider a job description as evidence of the job's essential functions. 42 U.S.C. § 12111(8); *Shell v. Smith*, 789 F.3d 715, 718 (7th Cir. 2015). Still, the employer's judgment is not absolute. *Miller v. Ill. Dep't of Transp.*, 643 F.3d 190, 198 (7th Cir. 2011). Other factors are relevant, including the amount of time spent on a function, the experience of those who previously or currently hold the position, and the consequences of not requiring the employee to perform the function. *See* 29 C.F.R. § 1630.2(n)(3); *Bilinksy*, 928 F.3d at 569.

The parties agree that lifting packages, including above the waist and shoulders, is an essential function (really *the* essential function) of a handler. Kotaska also does not dispute FedEx's judgment that a handler must be able to lift up to 75 pounds by herself and up to 150 pounds with help. Where they split is in the overlap of these facts. FedEx, at its most extreme, asserts that a handler must also be able to lift a 75-pound package overhead, as its management and a courier testified. Kotaska insists that a handler would, in practice, carry the heaviest packages below the waist and that no handler would or could lift 75 pounds overhead.

We agree that a rational jury could find that the essential functions of a handler do not include lifting a 75-pound package overhead. For one, the job description does not include

such specificity. It says only that a handler must lift up to 75 pounds without any hint of a height. Two couriers further testified that no employee would ever lift 75 pounds overhead, and that makes sense: if 75 pounds is the upper limit of the weight they need to lift, there is little reason a handler would place a package of that weight at the top of the pile.

This conclusion gets Kotaska only so far. To be a qualified individual, an employee must, if unable to perform a given function, show that there is a dispute whether this function is essential. *See Gratzl v. Office of Chief Judges*, 601 F.3d 674, 679 (7th Cir. 2010). Even successfully proving that one disputed function is inessential, however, is not itself proof that the employee is qualified. In concrete terms, that a handler need not lift 75 pounds overhead does not show that someone who can lift only 15 pounds overhead is qualified to be a handler. There are 60 pounds of possibilities in between.

Although FedEx's position has shifted over the course of this litigation, it has not forsaken this middle ground. It has consistently asserted that a handler needs to lift packages weighing *up to* 75 pounds over the waist and overhead. In its initial motion for summary judgment, it contended that "up to 75" is the same as 75 (distinguishing the two only in its reply), but it did not force the position that a handler either needs to lift 75 pounds overhead or nothing at all. Any evidence that a handler needed to lift 75 pounds was competent to prove that one also needed to lift 74 pounds, 20 pounds, or 10 pounds. The opposite is not true. Kotaska's evidence that

suffices to dispute whether a handler lifts 75 pounds does not necessarily challenge these lesser weights.[1]

Again, the parties agree that lifting packages weighing *up to* 75 pounds and lifting packages over the waist and overhead are essential functions of the handler position (regardless of who had the burden of production on this question). With those functions established, Kotaska had the burden of persuasion on the question whether she was a qualified individual. *See Miller v. IDOC*, 107 F.3d at 484. In other words, it was not up to FedEx to convince us that its managers perfectly understood the job's essential functions when they fired Kotaska. Instead, it was Kotaska's burden to provide evidence to

---

[1] This distinction between lifting *up to* 75 pound and lifting 75 pounds addresses the bulk of the dissent's criticisms of FedEx's and the district court's handling of this case. The committee's letter made clear that a handler must lift *up to* 75 pounds over the waist and overhead. Dissenting Op. at 24. Likewise, the district court rightly noted overwhelming evidence that the essential functions of a handler include lifting *up to* 75 pounds over the waist and overhead (though it also rightly recognized a dispute whether lifting 75 pounds overhead was essential in the same order). *Id.* at 25. Finally, FedEx's ground *A* for summary judgment (that the job requires lifting up to and including 75 pounds) contains ground *B* (that the job requires lifting less than 75 pounds but more than Kotaska's limitations). *Id.* at 28–29. This distinction is also not about FedEx being deliberately vague or exaggerating. *Id.* at 21. It reflects the fundamental duty of a handler: moving packages weighing up to 75 pounds in and out of containers and trucks. FedEx did not need a handler to lift any specific package to any specific height, except as incidentally necessary based on where space was available or the last person had placed the package.

persuade a rational factfinder that she can perform the job's essential functions.[2]

With that understanding, Kotaska's contentions on appeal fall short of demonstrating a dispute of material fact on this issue. She emphasizes supposed pretext. The first time FedEx dismissed her, it said that she needed to lift 75 pounds; it specified over the waist and overhead only the second time. She also deems suspicious inconsistencies in witnesses' explanations for how Fowler came to learn of her restrictions and his uncorroborated statement that she had complained to supervisors.

We can assume there is a dispute about whether FedEx or its employees were truthful, but this does not itself create a material dispute about the real question: whether Kotaska is

---

[2] We do not understand our position to be creating a circuit split. As the dissent acknowledges, even when other circuits place a burden of production on the employer to prove that a function is essential, the burden of persuasion remains with the plaintiff to prove she is a qualified individual. *See, e.g.*, *Hawkins v. Schwan's Home Serv., Inc.*, 778 F.3d 877, 893–95 (10th Cir. 2015); *EEOC v. Wal-Mart Stores, Inc.*, 477 F.3d 561, 568 (8th Cir. 2007). This case is analogous to *Bates v. United Parcel Serv., Inc.*, 511 F.3d 974 (9th Cir. 2007) (en banc). The Ninth Circuit concluded that the defendant had met its burden of producing evidence that "safe driving" was an essential function, so the plaintiffs had to persuade a factfinder that they could drive safely—a question independent from the validity of the qualification the defendant used to make its decisions. *Id.* at 992. FedEx showed that loading and unloading packages up to 75 pounds is an essential function, and it is Kotaska's burden to show she could perform that function. This question, too, is theoretically independent of FedEx's reasons for making its decision. (It is less so practically, given the unique nature of a lifting requirement—to prove she can do the job lifting only 15 pounds she must logically also prove she can do it lifting less than 75.)

a qualified individual. Perhaps a finding that FedEx was dishonest might help prove that a handler need not lift 75 pounds over the waist or head. What it will not do is establish the weight a handler *does* need to lift or confirm it is within Kotaska's capabilities. The record contains a "paucity of facts," as Kotaska's counsel put it, on these critical questions, with several employees testifying that a handler must lift 75 pounds overhead and the rest getting no more specific than somewhere between 15 and 75 pounds. Of course, a lack of evidence rarely favors the plaintiff, who cannot stave off summary judgment with speculation about what unproduced evidence might show. *See, e.g.*, *King v. Hendricks Cty. Comm'rs*, 954 F.3d 981, 985 (7th Cir. 2020); *Monroe v. Ind. Dep't of Transp.*, 871 F.3d 495, 503 (7th Cir. 2017); *cf. Bates v. United Parcel Serv., Inc.*, 511 F.3d 974, 992 (9th Cir. 2007) (en banc) (explaining that "[m]erely finding an absence of evidence" of the plaintiff's ability to perform an essential function is "insufficient").

The little evidence we do have here is underdeveloped, murky, and disputed. The dispute, however, is immaterial. Whatever precise weight a handler might need to lift above the waist or shoulders, no reasonable factfinder could place that weight within Kotaska's stringent medical restrictions.

It is undisputed that the average package going through the Cary facility weighed 15 pounds. Combining this average with Kotaska's medical restrictions means she was prohibited from *ever* lifting an above-average-weight package over her shoulders, and she could only occasionally lift some of them above her waist. Kotaska could face obstacles even with packages weighing less than this 15-pound average because she could lift 5 pounds above her shoulders with only "limited frequency" (an undefined term). The ADA, of course, does

not obligate an employer to let its employees exceed their doctor's restrictions, even if they think they can. *See Koshinski v. Decatur Foundry, Inc.*, 177 F.3d 599, 603 (7th Cir. 1999); *see also Cannon v. Jacobs Field Servs. N. Am., Inc.*, 813 F.3d 586, 593 (5th Cir. 2016); *Alexander v. Northland Inn*, 321 F.3d 723, 727 (8th Cir. 2003). Regardless of whether the average is the mean or median, as Kotaska asks us to distinguish, her medical restrictions precluded her from lifting a substantial portion of packages above her waist or shoulders.

We accept that Kotaska would at times have options to avoid lifting these packages too high but do not see how a reasonable jury can find that she could do so consistently and reliably. Kotaska is 5'2" and would need to load and unload 8' tall containers and 4'6" tall shelves, so many packages would be above her waist and shoulders. She also admitted that even on her first day, she lifted 30-pound packages to her shoulders. Similarly, one of the couriers who denied lifting 75 pounds overhead confirmed that handlers had to lift 15-pound packages above their shoulders daily. This testimony—by far the most favorable to Kotaska—means she would butt right up against the edges of her restrictions on a normal day. Not every day is a normal day, though, and Kotaska admits that she could not predict the size, weight, or placement of packages that might be in a container or truck. She did not load the containers that she would later unload, and she had no real control over how others loaded them. As the other courier who disputed the 75-pound requirement testified, some employees placed heavier packages higher up

with no issues, and some containers held only heavy packages stacked to the top.[3]

Absent evidence to suggest that this inherent variance occurred only within the bounds of Kotaska's restrictions, she was inevitably going to run into a package or string of packages in positions and at weights beyond her limited capabilities. Viewing the evidence in the light most favorable to Kotaska, we assume such a scenario would be uncommon, but even the capacity to respond to rare events can be an essential function. *See Peters v. City of Mauston*, 311 F.3d 835, 845 (7th Cir. 2002); *Emerson v. N. States Power Co.*, 256 F.3d 506, 513 (7th Cir. 2001). This is true here. Kotaska was the only handler at the Cary facility, and the handler's core function was to lift packages weighing up to 75 pounds independently. Under these circumstances, the district court rightly recognized that having a second employee to assist when the work exceeded her capabilities was not a reasonable accommodation as a matter of law. *See Majors v. Gen. Elec. Co*, 714 F.3d 527, 535 (7th Cir. 2013). Nor did the ADA obligate FedEx to let Kotaska

---

[3] We respectfully diverge from the dissent's view that more precise information is uniquely in the employer's hands. FedEx knows the height of its containers and trucks and the average weight of packages, but it had no reason to keep track of how high handlers lift packages of a given weight. As Charles testified, FedEx cared only that handlers maneuver packages weighing up to 75 pounds "in whatever manner is needed to get that package moved" to "[w]herever it needs to go." The best way to find out how high handlers need to lift a given weight to accomplish this goal would be to ask, and either party can do that. Indeed, the parties did ask couriers whether employees ever lifted 75 pounds overhead, and two of three answered "no," creating a genuine dispute. If Kotaska had asked whether a handler ever needed to lift in excess of her restrictions and received the same answer, this would be a different case.

continue working until she either could not lift a package or injured herself trying. *See Peters*, 311 F.3d at 846 (rejecting "try and see" approach to accommodation).

For these same reasons, we do not find Kotaska's three weeks as a handler to be particularly probative of whether she is a qualified individual. We have found a genuine dispute of fact in cases where a plaintiff had performed the job successfully before being dismissed because of a pre-existing disability. In every case, however, the disabled employee had worked for a period far longer than three weeks. *See, e.g.*, *Brown*, 827 F.3d at 614 (4 years); *Shell*, 789 F.3d at 718–19 (12 years); *Miller v. IDOT*, 643 F.3d at 192–93, 199 (4 years). The district court decisions on which Kotaska principally relies have similarly long periods. *See Jankowski v. Dean Foods Co.*, 378 F. Supp. 3d 697, 703 (N.D. Ill. 2019) (over 1 year); *Crain v. Roseville Rehab. & Health Care*, No. 4:14-cv-04079, 2017 WL 1075070, at *1–2, 5 (C.D. Ill. Mar. 21, 2017) (4 to 5 years). In contrast, we have refused to infer an employee was qualified from his working two weeks. *Dyke v. O'Neal Steel, Inc.*, 327 F.3d 628, 633–34 (7th Cir. 2003).

The logic of these cases is straightforward and supports summary judgment for FedEx. A factfinder can reasonably infer that a job function is not essential if an employee who cannot perform the function nevertheless succeeded at the job for a long period. We need not decide how long before this inference is reasonable. Wherever the line is will depend on the facts of each case, but given the unpredictability of the handler position, it is further out than the three weeks here.

On these facts, we conclude, any reasonable jury would find that lifting packages at some indeterminate weight and frequency above Kotaska's restrictions was an essential

function of the handler position. Whether this weight is closer to 16 or 75 pounds above the shoulder—or even just 6 pounds with more than limited frequency—might be up for debate. Under any of these views, Kotaska has failed to show a triable issue of fact on the question whether she is a qualified individual, so her discrimination claim fails as a matter of law. *See Garg v. Potter*, 521 F.3d 731, 736 (7th Cir. 2008).

As a final matter, Kotaska contends that the district court erred by entering summary judgment on her retaliation claim. We have said that even those who are not qualified individuals can maintain a claim for retaliation. *Rodrigo v. Carle Found. Hosp.*, 879 F.3d 236, 243 (7th Cir. 2018). To survive summary judgment, Kotaska needed evidence that (1) she engaged in protected activity, (2) she suffered an adverse action, and (3) there was a "but for" causal connection between the two. *Rowlands v. United Parcel Serv.*, 901 F.3d 792, 801 (7th Cir. 2018). FedEx does not dispute that Kotaska's complaints after her first dismissal were protected activities and that her second dismissal was an adverse action.

Where Kotaska falters is the causal element. She objects to the district court's reasoning that over a year had passed between her complaints and her second dismissal and that this time undermined any inference of causation. *See Tomanovich v. City of Indianapolis*, 457 F.3d 656, 665 (7th Cir. 2006). To escape this conclusion, she asks that we ignore the period she was unemployed, since FedEx could not fire her then. We doubt that this suggestion helps her case. FedEx let Kotaska go for her shoulder injury and limits on lifting, and when it discovered she was rehired without proof that her condition had sufficiently changed, it dismissed her again. Under these circumstances, a rational jury could not infer retaliation from

two dismissals even in quick succession. Rather, the inevitable inference is that the second dismissal was FedEx following through with the first, which here cannot be retaliatory since it occurred *before* any protected activities, *see Rozumalski v. W.F. Baird & Assocs., Ltd.*, 937 F.3d 919, 926 (7th Cir. 2019).

Regardless, close timing alone is rarely enough to raise a triable claim of retaliation. *See Abrego v. Wilkie*, 907 F.3d 1004, 1015 (7th Cir. 2018). There must be other circumstantial evidence of retaliation. *Id.* On that front, Kotaska offers only that FedEx management referred to her 2013 restrictions, the committee acknowledged she used the dispute procedure after her first dismissal, and the committee's members overlapped with those involved in her first dismissal. That her restrictions had not changed enough since the first dismissal was the *non-retaliatory* reason for the second. It is not also evidence of retaliation. The committee's references to the dispute process are also of no note. A valid retaliation claim requires that the decisionmaker know of the protected activity, *see Cervantes v. Ardagh Grp.*, 914 F.3d 560, 566 (7th Cir. 2019), but that does not mean one can infer retaliation from the decisionmaker's knowledge alone. That FedEx did not replace its decisionmakers between Kotaska's two dismissals does not make their knowledge any more suspicious.

### III

The judgment of the district court is AFFIRMED.

HAMILTON, *Circuit Judge*, dissenting. I respectfully dissent. Plaintiff Kotaska showed that FedEx was not entitled to summary judgment on the reason it gave for firing her and as the basis for its summary judgment motion. FedEx itself no longer defends the rationale of its original motion or the firing. It concedes on appeal that its stated reason for firing Kotaska—an inability to lift 75 pounds over her waist or even overhead—is just wrong. FedEx Br. at 2. Such heavy overhead lifts are not required, period.

On a quite different basis, however, the district court granted summary judgment, and now my colleagues affirm. Both the district court's decision and our affirmance stray from summary judgment standards and fair procedures. The majority opinion errs further by flipping the burden of production on essential functions under the ADA. Kotaska destroyed FedEx's original and exaggerated claims about the essential functions of the job. My colleagues affirm summary judgment against Kotaska because she did not then go further. They affirm because Kotaska did not herself prove the details of the job's essential functions in terms of the proportion of packages of which weights needed to be lifted above the waist and shoulders. I have not seen an ADA case before where the employer did not come forward with evidence needed to establish the essential functions of the job. The majority errs by holding this absence of evidence against the plaintiff.

Part I points out the circuit split the majority has backed into with the theory it has improvised for FedEx's benefit. Part II lays out the plaintiff's version of the facts, which is the only version we need to worry about on summary judgment. Part III explains the problems with the improvised theory for

affirming summary judgment. And Part IV explains how the majority rejects plaintiff's retaliation claim only by short-changing her evidence.

I.    *The New Circuit Split*

The majority's theory for affirming summary judgment backs into creating a circuit split under the ADA on which party has the burden of producing evidence of a job's essential functions. It's well established that the employee bears the ultimate burden of proving that she is *capable* of doing the essential functions of the job, with or without a reasonable accommodation. E.g., *Cleveland v. Policy Mgmt. Systems Corp.*, 526 U.S. 795, 806 (1999). But the employee should not bear the burden of *producing* evidence of what the essential functions are. That information is most readily available to the employer, not the employee (or applicant), so the employer should bear the burden of production.

That's why our colleagues in at least four circuits impose on the employer at least the burden of production on the issue of a job's essential functions. *Samper v. Providence St. Vincent Medical Center*, 675 F.3d 1233, 1237 (9th Cir. 2012) ("[Employer] has the burden of production in establishing what job functions are essential as much of the information which determines those essential functions lies uniquely with the employer.") (quotation marks omitted), citing *Bates v. United Parcel Service, Inc.*, 511 F.3d 974, 991 (9th Cir. 2007) (en banc); *E.E.O.C. v. Wal-Mart Stores, Inc.*, 477 F.3d 561, 568 (8th Cir. 2007) (reversing summary judgment; employer must put forth evidence establishing essential functions); *Ward v. Massachusetts Health Research Institute, Inc.*, 209 F.3d 29, 35 (1st Cir. 2000) (reversing summary judgment; employer bears burden of proving that a job function is essential); *Hamlin v. Charter*

*Township of Flint*, 165 F.3d 426, 430–31 (6th Cir. 1999) (affirming plaintiff's verdict; once a disabled individual contends that a function is nonessential, burden shifts to employer to prove that it is an essential function of the job).

When the burden of production is properly assigned to the employer, the proper resolution of this case is clear. Kotaska has refuted as false the employer's version of the essential functions and presented evidence that she can do the job. FedEx presented no evidence that lifting packages weighing over 15 pounds overhead—or frequently lifting packages of up to 15 pounds overhead—was an essential function of Kotaska's job. It has not met its burden of production and should not prevail at summary judgment. Kotaska has offered specific evidence about her lifting abilities. But on this record, the majority cannot pin down what the FedEx job requires other than to say vaguely that it entails "lifting less than 75 pounds but more than Kotaska's limitations," ante at 9 n.1, and to speculate that Kotaska would "inevitably" encounter packages beyond her lifting restrictions. Ante at 13.

In footnote 2, the majority denies it is creating this circuit split. Its rationale does not hold up to minimal scrutiny. FedEx did actually offer *some* evidence that handlers have to lift up to 75 pounds over their heads. Plaintiff responded with evidence that blew that assertion out of the water, to the point that FedEx has simply abandoned it. The majority acknowledges the factual dispute, but it tries to finesse the production burden by relying on the phrase "up to." If 75 pounds is not required, maybe 40, 30, or 20? Maybe only 15 if it is required frequently? The majority reframes FedEx's proposed essential function as requiring a handler (1) to lift packages weighing

up to 75 pounds (but maybe less!) and (2) to lift some packages of unspecified weights over the waist and overhead.

The majority denies it is creating the circuit split only by gutting the essential function inquiry, rendering the burden of production meaningless. In the majority's view, an employer need not define essential functions with any specificity. Instead it can simply state the function at the highest level of generality and leave the plaintiff with the burden of establishing the specifics of the job *before* she then has to show that she can do it. If the employer can get away with defining the functions so vaguely ("lifting packages over the waist and overhead"), then the burden of production becomes trivial. Evidence about an essential function must provide meaningful and specific guidance about what the job entails. Without such information, the essential function provides no useful guidance.

This is presumably why FedEx's job description for the handler position included the weight to be lifted, and both its stated reason for firing Kotaska and its arguments before the district court included the height to which a given weight would have to be lifted. Consider what a potential job posting would need to say to tell an applicant if she should apply. If a job posting said only that an employee would have to be able to lift packages, an applicant would have no idea whether she could do the job unless she were given the weight she would be expected to lift. Even if the posting gave a maximum weight (say, 75 pounds) an applicant might be mistaken about her ability to do the job if she were required to lift that amount not just off the ground but also overhead. Given the shelving and package containers handlers work with, FedEx should have to present evidence of how much weight handlers must

lift above their waists, above their shoulders, and above their heads. See *Jankowski v. Dean Foods Co.*, 378 F. Supp. 3d 697, 707 (N.D. Ill. 2019) (lifting restrictions identified height; essential functions of job "include[] lifting cases weighing up to 38 pounds, pallets weighing 48 pounds, and garbage weighing up to 38 pounds").

The majority treats FedEx's vague and discredited evidence as sufficient to shift the burden to plaintiff to come forward with evidence of the real details of the job's essential functions. This clever maneuver allows the employer to meet its burden by offering vague and literally unbelievable evidence of exaggerated job requirements. Our colleagues in other circuits have soundly placed the burden of production on the employer. Implicit in their cases is the expectation that the employer will meet that burden by producing evidence with meaningful detail and credibility. If evidence as feeble as FedEx's is enough to meet the burden of production, the burden fails to serve its purpose.

It is well established under the ADA that an employer's job description or other assertions are entitled to substantial (but not conclusive) weight in identifying a job's "essential functions." E.g., *Shell v. Smith*, 789 F.3d 715, 717–18 (7th Cir. 2015); *Stern v. St. Anthony's Health Center*, 788 F.3d 276, 285 (7th Cir. 2015). But if courts are to rely on employers' job descriptions and judgment, employers must describe the essential functions with enough specificity to tell the employee and courts what the job entails and, in ADA litigation, what the employee must show to establish that she can do the job. And an employer's description of the job functions must surely be at least plausible, not vague and unbelievable assertions like those FedEx has abandoned here.

Saving this oddly improvised grant of summary judgment is not worth creating this circuit split. The issue does not seem to arise often because it is so obviously appropriate for the employer to carry the burden of production. Even after this decision, I expect that few employers in ADA cases will be tempted to choose the risky strategy rewarded here: first propose an unrealistic essential function and then, after the plaintiff demolishes it, hope that courts will put the burden on the plaintiff to offer a different and detailed account of the essential functions of a job she had been performing successfully—all after discovery has concluded. Future plaintiffs can protect themselves from this risky defense strategy by insisting in discovery, at the very outset of the case, that the employer specify in detail the essential functions of the relevant job and support the claims with evidence. An employer who has fired someone or denied an employment application for inability to perform essential functions should be able to answer such an interrogatory immediately.

II. *Plaintiff's Version of the Facts*

The majority opinion sets out both sides' versions of the facts, but FedEx's version is not relevant here. Here's the story if we apply the summary judgment standard: Plaintiff lost her FedEx job in 2013 because she could not recover quickly enough from an injury. She asserted rights under the ADA, requesting an accommodation for her lifting restrictions, but she did not receive one. FedEx told her: "The Handler position at this location is physically demanding and requires repetitive lifting of weight up to 75 lbs unassisted," but did not specify how high.

By early 2015, with continued therapy, plaintiff had improved to the point where she could lift 75 pounds from floor

to waist frequently, lift 30 pounds from waist to shoulder oc-
casionally (up to one-third of the time, in disability-speak), lift
15 pounds from waist to shoulder frequently (up to two-
thirds of the time), and lift 15 pounds above her head occa-
sionally when using both hands.[1] With those greater abilities,
plaintiff was rehired by a FedEx manager as a handler. She
worked a part-time split shift, a couple of hours in the morn-
ing and a couple more in the evening. She performed that job
for three weeks in exemplary fashion, to the satisfaction of
managers and co-workers.[2]

But then FedEx officials who had been involved in firing
plaintiff two years earlier learned that she had been rehired.
They decided to fire her on the theory that plaintiff needed to,
but could not, lift 75-pound packages *over her head*. That's
groundless. FedEx handlers need to be able to lift 75-pound
packages *from floor to waist*. Plaintiff could do that. She offered
evidence that FedEx handlers simply do not have to lift such
heavy packages over their heads or even above their waists.
And plaintiff did not merely raise a genuine issue of fact.
FedEx has conceded that she is correct and that the 75-
pounds-overhead theory of its motion for summary judgment
is just wrong. FedEx Br. at 2; Dkt. 50, at 5 n.1.

---

[1] See S.S.R. 83–10, 1983 WL 31251 at *5 (defining terms "frequently" and
"occasionally" for purposes of disability evaluation).

[2] The majority opinion describes plaintiff's rehiring with the loaded
phrase "off the books." Ante at 1, 4. That's not accurate. She was hired "on
the books" based on her on-line application. The only disputed point is
immaterial: whether the manager who hired plaintiff also told her that she
would move plaintiff to a preferred job as a courier if she worked success-
fully as a handler for several weeks.

The only written document regarding lifting ability said that a handler needed to be able to lift 75 pounds. It did not say how high. In its motion for summary judgment, FedEx offered no specific evidence about the weights a handler must lift over her waist or over her head. The closest it came was an assertion that half of all packages weigh more than 15 pounds and that some unspecified portion of all packages must be loaded above the waist and another unspecified portion above the shoulder. That's where the evidence in this case is, as the majority says, "underdeveloped, murky, and disputed." Ante at 11. That's FedEx's failing, not plaintiff's.

FedEx managers in Memphis ordered plaintiff removed from the handler job with remarkable haste. They fired her before they had seen, let alone evaluated, her current medical restrictions. And they fired her without even taking time to discuss with plaintiff or her supervisors her ability to actually do the job.

When FedEx removed plaintiff from the handler position in 2015, it gave her a letter written by Jennifer Ramos, the same official who told plaintiff back in 2013 that her then-effective lifting restrictions could not be accommodated. Ramos's 2015 letter was false on two major points. First, she said falsely that the job required lifting up to 75 pounds "over the waist and overhead." Second, she said falsely that plaintiff had "notified management that you were having difficulty lifting packages overhead**."** Dkt. 28-8, Ex. 5. On appeal, FedEx does not even try to defend these aspects of the Ramos letter.

The evidence here thus supports an inference that FedEx managers were not even honest in dealing with plaintiff and her abilities in 2015. It certainly supports an inference that the managers bungled the case. At best they were confused about

how the job is actually done and what abilities it actually requires. Only by departing from summary judgment standards, speculating in favor of FedEx, and discounting evidence from plaintiff and her co-workers could we find that FedEx had a legitimate basis for firing plaintiff.

III. *The Improvised Theory for Affirmance*

The majority opinion does not mention the district court's original error on plaintiff's ADA claim, which led the district court to improvise its "Plan B" theory for sticking with its admittedly erroneous grant of summary judgment.

The district court initially granted summary judgment on the theory that FedEx had offered "overwhelming evidence" that an essential function of plaintiff's job was frequently lifting and moving packages above her waist and head that could weigh up to 75 pounds. App. 23. Plaintiff moved for reconsideration because that factual error was so central and so glaring. The district court frankly acknowledged that error: "Plaintiff appears to be correct. Defendant has not presented any evidence regarding the frequency with which packages weighing more than 30 pounds must be lifted above the waist and packages weighing more than 15 pounds must be lifted overhead by a handler." Order at 9. One would think the proper step would have been to vacate summary judgment and schedule a trial.

Nevertheless, the district court stuck to its original result. It did so by proposing its own set of essential functions not offered by FedEx. The Supreme Court has recently reminded us that this is only rarely an appropriate role for a court. See *United States v. Sineneng-Smith*, 140 S. Ct. 1575 (2020) (reversing where court of appeals departed from principles of party

presentation of issues); *Doherty v. City of Chicago*, 75 F.3d 318, 324 (7th Cir. 1996) ("It is not the role of this court to research and construct the legal arguments open to parties, especially when they are represented by counsel."). Such improvisation is especially inappropriate in this situation: The plaintiff marshaled her evidence to meet the defendant's actual motion; the court then punished her for failing to anticipate its new theory and tailor her evidence to address that theory, as well.[3]

To salvage the original grant of summary judgment on this new theory, the district court assembled seven paragraphs of facts from the summary judgment record. Order at 10–11. They showed that plaintiff's job required her to load and unload *some* packages above her waist and above her shoulders. She was loading and unloading freight containers as much as eight feet tall, and loading and unloading courier trucks with top shelves about four and a half feet above the floor. But those collected facts contained nothing—nothing—about the weight of packages that must be lifted or handled above the waist or above the shoulders.

The district court held that silence in the record against plaintiff. Because plaintiff had acknowledged, of course, that lifting *some* packages above her waist and shoulders is an essential function, the court said "it became her burden to prove that she could perform those essential functions within her doctor's restrictions." Order at 9, citing *Miller v. Illinois Dep't*

---

[3] In responding to Kotaska's motion for reconsideration, FedEx acknowledged that "the entirety of FedEx's arguments" was predicated on the job description supposedly requiring handlers to lift 75 pounds *overhead*. Dkt. 50, at 5 n.1.

*of Corrections*, 107 F.3d 483, 484 (7th Cir. 1997) (saying generally that plaintiff has burden of proof on "the issue of capability" in case where prison guard was fired after she lost her vision).

As explained above, *Miller*'s point about the ultimate burden of persuasion on plaintiff's capabilities does not support the district court's (and now the majority's) placing the burden of production on essential function on the employee. The burden of producing evidence of a job's essential functions should fall on the employer. Supra at 18—19 (cases from other circuits imposing burden of production on employer).

If the relevant frequency and weight information is material to deciding the essential functions, then FedEx had the burden of producing it. It is improper, impractical, and unfair to require the employee to describe in minute statistical detail the operations of the employer. See *Int'l Brotherhood of Teamsters v. United States*, 431 U.S. 324, 359 n.45 (1977) ("Presumptions shifting the burden of proof are often created to reflect judicial evaluations of probabilities and to conform with a party's superior access to the proof."), citing McCormick, Law of Evidence §§ 337, 343 (2d ed. 1972), and James, *Burdens of Proof*, 47 Va. L. Rev. 51, 61 (1961); see also *Samper v. Provident St. Vincent Medical Center*, 675 F.3d 1233, 1237 (9th Cir. 2012) (defendant has burden of production in identifying essential functions because it controls the information). It's even less practical and more unfair if the employee needs to collect in-

formation to rebut not only the arguments the employer actually made but also arguments that the court might construct on behalf of the employer.[4]

Even apart from the burden of production, plaintiff did offer evidence here. She testified that she performed the job successfully, without pain, and in the same way that her co-workers did. Her co-workers and supervisors agreed. Plaintiff's co-workers testified that handlers would have to lift 5 to 15 pounds overhead. Plaintiff testified that she did so and that the work was consistent with her weight restrictions. *FedEx has not offered conflicting evidence*, let alone established the contrary beyond reasonable dispute. Plaintiff also testified that she in fact lifted 20- to 30-pound packages above her waist to shoulder height, at least to the extent needed. That also fit within her medical restrictions. She was doing the job! And if FedEx disagreed, it was surely in the best position to know how often its handlers actually need to handle heavier packages above their waists and shoulders. It offered nothing.

The majority's error runs up against another line of our cases, as well. The majority affirms by saying it was plaintiff's burden to refute the district court's Plan-B theory after she demolished FedEx's original theory. That's not the way summary judgment works. When a party files a motion for summary judgment raising ground A, the district court errs by granting on ground B, which the moving party could have

---

[4] Imagine how FedEx and other carriers will respond to future discovery requests—which will be necessary in similar cases—asking for granular detail about package weights, percentage of packages that must be lifted above certain heights, and so on. Such discovery will no doubt be burdensome, but objections should be overruled given the majority's novel allocation of the burden of production in this case.

raised but did not. *Edwards v. Honeywell, Inc.*, 960 F.2d 673, 674 (7th Cir. 1992) (reversing summary judgment); *Titram v. Ackman*, 893 F.2d 145, 148 (7th Cir. 1990) (same); *Malhotra v. Cotter & Co.*, 885 F.2d 1305, 1310 (7th Cir. 1989) (same) (superseded by statute on other grounds). Federal civil motion practice is expensive and burdensome enough when the party opposing a motion needs to respond to the moving party's actual arguments. We should not expand that burden to offering evidence to rebut any arguments the moving party *might* have made.

The majority opinion insists that this is not a new theory, but rather one implicit in FedEx's insistence that a handler must be able to lift packages weighing up to 75 pounds over the waist and overhead. Ante at 9 & n.1. This implicit "greater includes the lesser" approach is not how we address issues raised at summary judgment. See *A&C Construction & Installation, Co. WLL v. Zurich Am. Ins. Co.*, No. 19-3325, 2020 WL 3527303, at *4 (7th Cir. June 30, 2020) (plaintiff waived alternative argument for opposing summary judgment in part by not raising it until motion to reconsider). The majority opinion is correct that evidence that might be used to prove that the job required lifting 75 pounds overhead *could* also be used to show that Kotaska had to lift some lower amount overhead. But FedEx did not make such an argument to the district court. It said only vaguely that Kotaska would have to exceed her lifting restrictions because of the average package weight of 15 pounds. It never specified the essential function.[5]

---

[5] The majority opinion also appears to understand "lifting up to 75 pounds" to mean "lifting some amount that may or may not be close to 75 pounds." Ante at 8–9 & n.1. This is simply not what any reader would understand the phrase to mean. The phrase "up to" indicates a maximum.

The majority opinion also errs by drawing inferences in favor of FedEx rather than plaintiff. It relies heavily on the 15-pound average, finding that plaintiff could not frequently lift half the packages above her waist. Ante at 11–12. There's no evidence she needed to. Then, doubling down on its improvised factual analysis, the majority asserts that plaintiff "was inevitably going to run into a package or string of packages in positions and at weights beyond her limited capabilities." Ante at 13.

With respect, where does "inevitably" come from? It's not in the evidence. It appears to be an inference from the assertion that Kotaska "would butt right up against the edges of her restrictions on a normal day" and that the work environment was not perfectly predictable See ante at 12. But this is an inference in favor of FedEx, contrary to the summary judgment standard. FedEx has access to real evidence on the point. It presented no evidence even asserting that package weight varied significantly or that on some days handlers face deluges of heavy packages that would push Kotaska beyond her limits.

The majority's speculation about what is "inevitable" highlights another troubling implication for future cases. The logic of the majority opinion suggests that an employer can establish that an employee is not a qualified individual by showing that an individual with a disability works within her limits rather than beyond them. This is perverse. Under this

---

So when FedEx describes "lifting up to 75 pounds," it means that the maximum amount handlers would be expected to lift is 75 pounds *and* that they are expected to lift that amount. To illustrate further, if a person said that he runs "up to thirty miles a week" when in fact he has never run more than ten, no one would think he was being truthful.

logic, an employee who can do the job and has done the job could be removed based on mere speculation. The ADA was enacted in large part to prevent such discrimination against people with disabilities who can actually do their jobs. See *Chevron U.S.A. Inc. v. Echazabal*, 536 U.S. 73, 85 (2002) (Congress "was trying to get at refusals to give an even break to classes of disabled people, while claiming to act for their own good in reliance on untested and pretextual stereotypes"); *Siefken v. Village of Arlington Heights*, 65 F.3d 664, 666 (7th Cir. 1995).

And of course, the majority's speculation about Kotaska "inevitably" encountering packages too heavy for her is contradicted by the evidence from plaintiff and her co-workers and supervisors that she was handling the job successfully. To justify affirmance, therefore, the majority must discount that evidence. We have often found that such evidence about how jobs are actually performed is sufficient to create a genuine dispute of fact. E.g., *Brown v. Smith*, 827 F.3d 609, 614 (7th Cir. 2016) (affirming jury verdict); *Miller v. Illinois Dep't of Transportation*, 643 F.3d 190, 192–93, 200 (7th Cir. 2011) (reversing summary judgment).

The majority rejects plaintiff's evidence because she worked for only three weeks before FedEx fired her. Ante at 14 (offering no guidance but saying such evidence must be evaluated case by case). To support this new and vague limit on this well-established line of authority, the majority cites only *Dyke v. O'Neal Steel, Inc.*, 327 F.3d 628, 633–34 (7th Cir. 2003). *Dyke* is not at all similar to this case and does not support this discounting of plaintiff's evidence. Plaintiff Dyke had only one eye. He took a temporary job at a metal factory with many hazards. After two weeks on the job, he was fired

because he could not pass physical and vision tests that required binocular vision. In affirming summary judgment on his ADA claim, we relied on "unchallenged expert testimony" that the vision requirements were "reasonable and appropriate" because of the factory's dangers for employees. In the face of that expert testimony, plaintiff's record of two weeks at work was not enough to show he could safely perform the essential functions.

That unchallenged expert testimony in *Dyke* is not remotely comparable to the messy factual record here. FedEx has not been able to keep its story straight about its actual, realistic requirements. The defense also offered no evidence to the effect that the job varies so much that three weeks are not a reasonable test of ability to do the work. The majority's speculation to the contrary is no substitute for such evidence. Plaintiff's ADA discrimination claim is loaded with genuine issues of material facts. We should send it back for trial.

IV. *Retaliation Claim*

FedEx concedes that plaintiff engaged in activity protected by the ADA when she challenged her firing back in 2013. Several of the people engaged in firing her in 2015 had been involved in the earlier firing, and they remembered it. Ramos wrote both termination letters. Her 2015 letter actually recounted plaintiff's 2013–14 internal appeal based on disability rights.

The majority affirms summary judgment for FedEx on plaintiff's retaliation claim on the theory that too much time had passed. That conclusion is based on a legal error and a reading error.

The delay between plaintiff's protected activity and the alleged retaliation was just over one year, from February 2014, when plaintiff's internal appeal ended, to April 2015, when the same FedEx managers acted to terminate her employment a second time. Our case law on the passage of time in retaliation cases does not lend itself to bright lines. When time is the *only* factor the plaintiff relies upon to show a causal link between her protected activity and a new adverse action, even a relatively short gap can defeat an inference of causation, *Abrego v. Wilkie*, 907 F.3d 1004, 1015 (7th Cir. 2018), especially where the plaintiff has *remained employed*. E.g., *King v. Ford Motor Co.*, 872 F.3d 833, 842 (7th Cir. 2017).

These precedents do not apply here for two reasons that show the majority's legal error and its reading error. The reading error is the majority's assertion that plaintiff relies on timing, and only timing, to show causation. Ante at 15–16. In fact, she relies on much more. Pl. Br. at 33–36. She offered evidence that FedEx's decisionmakers not only knew about her earlier protected activity but took that entire episode into account in deciding what to do with her in 2015. Add in FedEx's hasty, confused, and even dishonest decision to fire her without actually reviewing her new medical restrictions or even *talking* with plaintiff or her supervisors. A reasonable jury could easily find retaliatory motive. See, e.g., *Lewis v. City of Chicago*, 496 F.3d 645, 656 (7th Cir. 2007) (plaintiff defeats summary judgment when she puts forward other evidence of a causal link in addition to suspicious timing).

Second, plaintiff's evidence here supports the inference that FedEx managers retaliated against her at their very first opportunity to do so. She had not remained employed with FedEx, so there was no earlier opportunity to retaliate. As

soon as Wibright and Fowler learned that plaintiff had been rehired, they moved immediately to challenge that action. They took just two weeks to remove her from her new job. (They offer a benign explanation—concern for plaintiff's health—but that's a jury question, especially given the evidence of dishonesty and/or confusion among FedEx managers in this case.) See, e.g., *Veprinsky v. Fluor Daniel, Inc.*, 87 F.3d 881, 891 n.6 (7th Cir. 1996) (long gap between protected activity and adverse employment action can support retaliation claim if plaintiff presents evidence that employer was "wait[ing] in the weeds" for the right time to retaliate); see also *Malin v. Hospira, Inc.*, 762 F.3d 552, 559–60 (7th Cir. 2014) (reversing summary judgment; collecting cases showing we do not use bright lines based on passage of time where retaliation plaintiffs offer additional evidence of retaliatory motives).

For these reasons, we should reverse summary judgment and remand for trial on Kotaska's ADA discrimination and retaliation claims.